M. A. SCHAPIRO & CO., Inc., Plaintiff,

v.

SECURITIES AND EXCHANGE COM-
MISSION et al., Defendants.

Civ. A. No. 2243-70.

United States District Court,
District of Columbia.

Feb. 24, 1972.

George D. Reycraft, New York City, for plaintiff.

Thomas A. Flannery, U. S. Atty., Philip A. Loomis, Jr., Gen. Counsel, Richard E. Nathan, Special Counsel, and Michael A. Macchiaroli, Washington, D. C., for defendants.

## OPINION

AUBREY E. ROBINSON, District Judge.

This suit was brought under the public information section of the Administrative Procedure Act, 5 U.S.C. § 552, popularly known as the Freedom of Information Act of 1966. M. A. Schapiro & Co., Inc., plaintiff, is an underwriter and broker-dealer in bank securities. Plaintiff is suing for an order and judgment enjoining the defendants from withholding, and ordering the defendants to produce, the Securities and Exchange Commission's Staff Study on the

off-board trading problem raised by the New York Stock Exchange's original Rule 394; and all transcripts made and documents received by the Securities and Exchange Commission in the course of that investigation. Plaintiffs filed a Motion to Shorten the Time for Defendant to Answer, And For a Preliminary Injunction. Both parties have briefed the questions of law and fact, and this Court is now prepared to resolve them on the merits.

The defendants contend that the information requested by plaintiff should not be disclosed. They note that the staff study examined national securities exchanges and was performed by the agency that is responsible for the regulation and supervision of those "financial institutions." [5 U.S.C. § 552(b) (8).] If the study, related transcripts, and documents submitted in the course of investigation are indiscriminately disclosed, it could harm the integrity and security of financial institutions. Further, defendants allege that this information is exempt from disclosure having been gathered in the course of an investigation compiling facts relating to the enforcement of laws. [5 'U.S.C. § 552(b) (7).] Moreover, the defendants assert that they must protect the privacy and the competitive position of citizens who offer information to assist government policy makers. Thus, they note the exception to disclosure under the Act for "trade secrets" and commercial or financial information obtained from a person and privileged or confidential. [5 U.S.C. § 552(b) (4).] Defendants also allege that this information is exempt from disclosure under 5 U.S.C. §§ 552(b) (3) and (5). These sections relate to information specifically exempted from disclosure by statute, and inter-agency or intra-agency memoranda or letters that would not be available by law to a party other than an agency in litigation with the agency.

■ The purpose of the Freedom of Information Act is to increase citizen's access to government records. It was not intended that in the process of clos-

ing loopholes in the requirement that the public not be denied legitimate information, that new loopholes were created. In Bristol-Myers Co. v. Federal Trade Commission, 138 U.S.App.D.C. 22, 424 F.2d 935 (D.C.Cir.), cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970), it was held that specific exemption of records from disclosure pursuant to the Freedom of Information Act were to be narrowly construed. Where the request for information seeks material outside the needed category, the Court should view the records and determine the discoverability of each record. Further, in order to hold the material exempt from disclosure under this Act, the Court must examine each document and explain the specific statutory justification for withholding that particular item.

In compliance with this direction from the Court of Appeals, this Court issued an Order requiring the production of the requested documents for *in camera* inspection to determine whether they actually fell within the exceptions of the Freedom of Information Act. One week after the signing of the Order for Production of Documents For *In Camera* Inspection, and approximately six years after its creation, the Securities and Exchange Commission released for public consumption, the ,entire unexpurgated Staff Study that is the subject of this suit. This disclosure by the Securities and Exchange Commission makes the questions of exemption, as they relate to the Staff Study, moot. This action on the part of the defendants, however, is an indication on their part as to the merits of their initial assertions.

Upon *in camera* inspection of the submitted documents, it is the conclusion of this Court that, for the following reasons, all of the requested documents must be made available to the plaintiff.

■■ First, these documents are not specifically exempted from disclosure by any statute. The Securities and Exchange Commission alleges that 18 U.S. C. § 1905 prevents the disclosure of this information. That statute, however,

does not prevent disclosure of information that is authorized to be disclosed under other laws. There is nothing in § 1905 of Title 18 that prevents the operation of the Freedom of Information Act. Moreover, the provision for documents specifically exempted from disclosure by statute [5 U.S.C. § 552(b) (3)] relates to those other laws that restrict public access to specific government records. It does not, as defendants allege, relate to a statute that generally prohibits all disclosures of confidential information.

■ Second, the documents involved are not inter-agency or intra-agency memoranda or letters. [5 U.S.C. § 552(b) (5).] Thus, they are not encompassed by this exception. None of these documents express an exchange of ideas between agencies or their respective staff members. There is no administrative policy-making process exhibited in any of the transcripts or documents presented. This exception,

> "[d]oes not authorize an agency to throw a protective blanket over all information by casting it in the form of an internal memorandum. Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended.' "

[Bristol-Myers Co. v. FTC, *supra*, 424 F.2d at 939.]

■ Third, although arguably these documents are investigatory files compiled for law enforcement purposes, the agency has not proffered any facts that would show it contemplated within the reasonably near future, a law enforcement proceeding based upon the materials sought. Six (6) years have elapsed and these documents have not been, nor is it alleged that they will be, the basis for either a criminal or civil action against anyone. In fact, the Securities and Exchange Commission's willingness to make public any transcript or document that the person testifying said would be permissible indicates that the Securities and Exchange Commission was not concerned with providing information to possible defendants that was gathered by this investigation. Thus, the exception for such information does not apply in this case. [Bristol-Myers Co. v. F. T. C., *supra*.]

■ Fourth, these documents arguably do not concern financial institutions. A "financial institution" as defined by the defendants, means a "bank, trust company, investment banker, or banking association or firm . . . ." [15 U.S. C. § 79 et eq., 79q(c) (1971).] This definition does not include national securities exchanges or broker-dealers. The possibility, however, that the integrity of any broker-dealer or securities exchange may be harmed is remedied by the deletion of all identifying material. [Davis, Administrative Law Treatise, 139 (Supp. 1970.)] This study and its related transcripts and documents, initiated and gathered for the express purpose of changing trading rules and related practices of national securities exchanges, does not fit within the exception in the Act for material, "contained in or related to examination, operating, or condition reports prepared by, . . . an agency responsible for the regulation or supervision of financial institutions." By deleting identifying features of the transcripts and documents, before release, the defendants may prevent any possible adverse effect that could befall any of those persons who openly discussed off-board trading with the Securities and Exchange Commission.

■ Fifth, these items do not fall within the exemption for "trade secrets" and commerical or financial information obtained from a person and privileged or confidential. [5 U.S.C. § 552(b) (4).] This exemption serves the function of protecting privacy and competitive position of citizens who offer information to assist government policy makers. The statutory scheme, however, does not permit a bare claim of confidentiality to immunize agency files from scrutiny. This Court has the responsibility to determine the validity and extent of the

claim of confidentiality, insuring the fact that the exemption is strictly construed in light of its legislative intent. Where possible, the Court may order identifying material deleted from a document to render it subject to disclosure. [Bristol-Myers Co. v. F. T. C., *supra*.]

██ This exemption was considered in Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D. C. 147, 425 F.2d 578 (1970). Here, an aerospace contractor sought disclosure of Board orders and opinions issued during the 1962–1965 renegotiations of the contracts of fourteen other companies, and also records relating to its own 1965 contract renegotiations. The request for records relating to Grumman's own contract renegotiations during 1965 included correspondence between the Board and Grumman's prime contractor. The Board asserted this material was exempted from disclosure under 5 U.S.C. § 552(b) (4). The Court of Appeals held, as to these documents, that the test for availability was "whether they contain commercial or financial information which the contractor would not reveal to the public." [425 F.2d at 582.] Regardless of whether the information was submitted on the express or implied condition that it be kept confidential, a Court should determine, on an objective basis, that this is not the type of information one would reveal to its public. In Bristol-Myers Co. v. F. T. C., the District Court had assumed that the wishes of the submitter of information would govern. [284 F.Supp. 745, 747 (1968).] The Court of Appeals, in remanding the action for more particular adjudication on each exemption, suggested that the bare claim by an agency that records are within the "trade secrets" exemption is not determinative. [424 F.2d at 938.] The Circuit Court did not expressly disapprove of the District Court's subjective test. It did, however, suggest that it was adopting an objective standard for confidential information when it cited *Grumman*. It is submitted that this is the better test and the one that en-

forces the purposes of the Act to its utmost.

It should be noted here that the information divulged in the volumes of transcripts and documents does not relate to "trade secrets." Upon viewing them, one may candidly state that their sole concern was the practice and procedure for off-board trading. As among competitors and the basic public that is involved in off-board trading, nothing in the documents or transcripts could be classified as a "trade secret." Moreover, none of the information given could objectively be said to be of the type that one would mind revealing it to the public.

██ The Commission has not attempted, nor have any one of the individuals who testified attempted (and many were on notice of this pending litigation) to point to any information specifically that they claim is exempted. No one has shown this Court any information that would be of the type they would not normally want the public to know. These parties have failed to express to this Court any rational reason why these items should not be made public other than a bare claim of confidentiality. Most of the people who gave information to the Commission were genuinely concerned with keeping the activities of broker-dealers and national exchanges in a "fish-bowl" for the public to view. Thus, the action of this Court is consistent with their genuine desires.

Having carefully reviewed everything presented to this Court, *in camera*, it is determined that none of the material may be withheld. All identifying material that would indicate who the individual giving the information was shall be deleted where the person so requested. The facts, figures, policies, and procedures, however, as discussed in the transcripts and illustrated by the documents, are not to be altered. They are relevant to the plaintiff's cause, and fully discoverable.

Therefore, plaintiff's motion for a Preliminary Injunction restraining the defendants and each of them, and officers acting under their direction and authority or in active concert or participation with them, from further withholding the records in question that constitute the subject matter of this complaint is granted.

An appropriate order is entered herein.