Reuben B. **ROBERTSON, III**, et al.

v.

Alexander P. **BUTTERFIELD**, Administrator, Federal Aviation Administration, et al., Appellants.

No. 72–2186.

United States Court of Appeals, District of Columbia Circuit.

Argued July 26, 1973.

Decided May 9, 1974.

Rehearing Denied July 11, 1974.

Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, Robert E. Kopp and Thomas G. Wilson, Attys., Dept. of Justice, were on the brief for appellants.

Alan B. Morrison and Ronald L. Plesser, Washington, D. C., were on the brief for appellees.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and ROBB, Circuit Judge.

FAHY, Senior Circuit Judge.

The appeal raises the question whether the Federal Aviation Administration is obligated under the Freedom of Information Act, 5 U.S.C. § 552, to disclose to appellees, plaintiffs in the District Court, certain reports in the files of the Administration. These reports, compiled under what is known as the System Worthiness Analysis Program (SWAP), consist of analyses made by employees of the Administration of the operation and maintenance performance of airlines, under the responsibility of the Administration to regulate the safety of civil aeronautics.[1] Special teams of ex-

1. See section 601(a) of the Federal Aviation Act, as amended, 49 U.S.C. § 1421(a).

perienced inspectors make periodic visitations of airlines to inspect and analyze their safety and maintenance operations. The findings and recommendations for corrective action are disclosed to the airline management in a meeting of Administration and airline personnel. A final SWAP report is thereafter prepared, containing the findings and recommendations of the inspection team. Appellees requested but were denied access to those reports for the year 1969. While an intra-agency appeal was pending the Air Transport Association, on behalf of numerous airlines which are members, requested that the Administrator issue an order under section 1104 of the Federal Aviation Act of 1958 [2] withholding SWAP reports from the public. The Administrator, complying, ruled that all SWAP reports, not only those requested by appellees, but all in existence and thereafter to be complied, should be withheld from public disclosure because "disclosure of the information contained therein would adversely affect the interests of the airline being investigated and is not required in the interest of the public."

### I

Appellees' suit in the District Court for injunctive relief under the Information Act ensued. The court granted their motion for summary judgment as to Count I of the Complaint, which raised the issue as to the SWAP reports, and ordered the Administrator to release the reports, holding, "the documents sought by plaintiffs in Count I are, as a matter of law, public and non-exempt within the meaning of 5 United States Code 552. . . ." All other counts were dismissed.[3]

No other explanation of the decision appears, but it is clear from the above posture of the case that Exemption (3) of the Information Act, relied upon by appellants in the District Court, was held not to apply. That exemption protects from disclosure matters "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). We are accordingly faced with the question whether Exemption (3), considered with the Administrator's action under section 1104 to which we have referred, protects the reports from disclosure as matters "specifically exempted from disclosure by statute." We think not, for reasons now explained.

### II

■ This court has continued to adhere to the position that exemptions of the Information Act are to be narrowly construed. Vaughn v. Rosen, 157 U.S. App.D.C. 340, 484 F.2d 820 (1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); Cuneo v. Schlesinger, 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973). The ordinary meaning of the language of Exemption (3) is that the statute therein referred to must itself specify the documents or categories of documents it authorizes to be withheld from public scrutiny. Section 1104 of the Aviation Act fails to do this. It is, rather, a congressional delegation to the Board or Administrator of the Aviation Authority to weigh whether a person objecting to disclosure would be adversely affected by it, and whether, even if so affected, disclosure nevertheless "is not required in the interest of the public."

2. Section 1104 of the Act reads:

> Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to the provisions of this chapter or of information obtained by the Board or the Administrator, pursuant to the provisions of this chapter, stating the grounds for such objection. Whenever such objection is made, the Board or Adminis-

> trator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public. . . .
> 49 U.S.C. § 1504 (1970).

3. No appeal is before us except from the grant of summary judgment for appellees on Count I.

In EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the Supreme Court considered a specific exemption by statute, Exemption (1) of the Information Act itself, which exempts matters "specifically required by Executive Order to be kept secret in the interest of the national defense or foreign policy." 5 U.S.C. § 552(b)(1). The documents sought to be disclosed had been classified as secret pursuant to Executive Order 10501.[4] Exemption (1) was construed to be a specific reference by Congress itself to a definite class of documents which were not to be disclosed. 410 U.S. at 83. Their disclosure accordingly was not required. No particular class of documents as such are referred to in section 1104 of the Aviation Act. The Administrator ordered the SWAP reports not to be disclosed although they did not fall within any congressionally specified statutory category. It would be unacceptable to hold that his conclusion that disclosure of any and all of the reports requested [5] would adversely affect the interests of each airline covered,

and is not required "in the interests of the public," is a specific exemption by section 1104. Not only would such an interpretation overstrain the language of Congress in Exemption (3), see Cutler et al. v. C.A.B., C.A. No. 74–8, 722 F.Supp. 375 (D.D.C., 1974), it would also be at odds with the history and purpose of the Information Act considered in its relationship to section 1104, a matter further to be considered.

### III.

A. Before doing so, we note appellants' reliance upon the Attorney General's Memorandum On the Public Information Section of the Administrative Procedure Act (June, 1967), which contains the following:

> Explaining exemption (3) the House Report, at page 10, notes that there are "nearly 100 statutes or parts of statutes which restrict public access to specific Government records. These would not be modified by the public records provisions of S.1160."[6]

---

4. This Presidential order had served as the basis for classification of information "which requires protection in the interests of national defense."

5. Aside from all past and future SWAP reports.

6. Attorney General's Memorandum at 31. But the Attorney General went on to say: The reference to "nearly 100 statutes" apparently was inserted in the House report in reliance upon a survey conducted by the Administrative Conference of the United States in 1962. This survey concluded that there were somewhat less than 100 statutory provisions which specifically exempt from disclosure, prohibit disclosure except as authorized by law, provide for disclosure only as authorized by law, or otherwise protect from disclosure. The reference therefore indicates an intention to preserve whatever protection is afforded under other statutes, whatever their terms. For examples of the variety of statement of such provisions compare 18 U.S.C. 1905; 26 U.S.C. 6103; 42 U.S.C. 2000e–8, 2161–2166; 43 U.S.C. 1398; 44 U.S.C. 397; and 50 U.S.C. 403g. Thus, the House Report's mention of "somewhat less than 100 statutory provisions" was quite indefinite. Moreover, as we stated in Getman v. N. L. R. B., 146 U.S.App.D.C. 209,

450 F.2d 670, 673, n.8 (1971), the Senate Report is to be preferred for the reason stated in *Getman.*

Appellants' reliance upon the examples given by the Attorney General of statutes which may come within Exemption (3) also is excessive. Each of them can be distinguished from section 1104 of the Aviation Act:

18 U.S.C. § 1905 is a criminal statute prohibiting unauthorized disclosure of any information by a federal employee. There is nothing in the section which prevents the operation of the Information Act. It does not fall within the ambit of Exemption (3). M. A. Schapiro v. S. E. C., 339 F.Supp. 467 (D.D.C.1972); Frankel v. S. E. C., 336 F.Supp. 675 (S.D.N.Y.1971), rev'd on other grounds 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972).

26 U.S.C. § 6103 represents the congressional judgment that federal income tax return should remain confidential except in very limited and prescribed circumstances. This statute embodies the specificity which section 1104 of the Aviation Act lacks. Federal Sav. & Loan Insur. Corp. v. Krueger, 55 F.R.D. 512, 514 (N.D.Ill.1972).

42 U.S.C. § 2000e–8(e) is similar to 18 U.S.C. § 1905, *supra*, in that it prohibits the unauthorized disclosure by any EEOC em-

Appellants analyze the Administrator's authority under section 1104 with that of the Atomic Energy Commission under 42 U.S.C. §§ 2161–2166 (1970). In this connection appellants refer to *Mink, supra,* 410 U.S. at 77–78 n.4, where it is stated that material within those provisions might come within Exemption (3). Those provisions, however, refer to "Restricted Data"; so, too, does 42 U.S.C. § 2014(y), also mentioned by appellants. We consider such references to be in contrast with the broad discretionary authority conferred by section 1104. The latter mentions no particular category of information. It applies generally to any document filed pursuant to the Aviation Act which the Board or Administrator decides to bring within the non-disclosure provisions. The Administrator's decision in this case merely repeated the congressional language and offered no supporting explanation.

Davis, Administrative Law, section 3A.18 (1970 Supp.) refers to Exemption (3) in its application *vel non* to the non-disclosure power of the Security and Exchange Commission, somewhat like that available to the present Administrator. Disclosure is available "only when in its [the S.E.C.'s] judgment a disclosure of such information is in the public interest." Professor Davis states that this language "perhaps" serves specifically to exempt "whatever information the Commission, acting within the power granted, decides to withhold." *Id.* The statute, 15 U.S.C. § 78x, is subject to the same analysis applicable to 42 U.S.C. §§ 2161–2166, *supra.* Section 78x(a) reads:

Nothing in this chapter shall be construed to require . . . the revealing of *trade secrets* or *processes* in any application, report or document filed with the Commission under this chapter. (Emphasis added.)

It goes on to allow the Commission some discretion, to decide which trade secrets or processes should be disclosed in the "public interest."

B. Analyzing somewhat further the legislative history, the House Report accompanying the Information Act lists three major purposes of the legislation, including the following:

[The Act] sets up workable standards for the categories of records which may be exempt from public disclosure, replacing the vague phrases "good cause found," *"in the public interest,"* and "internal management" with specific definitions of information which may be withheld. (Emphasis added.)

H.R.Rep. No. 1497, 89th Cong., 2d Sess. at 2 (1966), U.S.Code Cong. & Admin. News 1966, p. 2419.

As we have seen, the previously enacted section 1104 of the Aviation Act vests in the Board or Administrator of the Federal Aviation Authority the discretion to judge "when . . . a disclosure of such information would ad-

---

ployee of information dealing with unlawful labor practices. This statute, however, has a built-in time limit to non-disclosure, for it only prohibits disclosure "prior to the institution of any [unlawful labor practice] proceeding."

42 U.S.C. §§ 2161–2166 is discussed in the body of this opinion.

43 U.S.C. § 1398 presents yet another situation different from section 1104. Section 1398 provides that confidential information submitted by witnesses before the Public Lands Commission shall remain confidential. The distinguishing mark of the section, as contrasted with section 1104, is that no discretion is vested in the Public Lands Commission.

44 U.S.C. § 397 is now codified as 44 U.S.C. §§ 2103–2111 and is quite specific with respect to the powers and duties of the Archivist of the United States and the Administrator of General Services. The statute grants very little discretion to either official regarding whether public documents should be disclosed or remain confidential. *See* Nichols v. United States, 460 F.2d 671, 673–674 (10th Cir. 1972).

Finally, 50 U.S.C. § 403g concerns one aspect of the duties of the director of the Central Intelligence Agency. By this section Congress, in the interest of national security, specifically exempts the CIA from disclosing, *inter alia,* the names, positions, functions or salaries of its employees as was required by 5 U.S.C. § 654 (1958), repealed by Pub.L. 86–626, 74 Stat. 427 (July 12, 1960).

versely affect the interests of such person [requesting nondisclosure] and is not required in the interest of the public", thus containing the broad vagueness which, according to the House Report, the Information Act was designed *to remove from the public disclosure section of the Administrative Procedure Act.* To hold that section 1104 remained unaffected by Exemption (3) we think would contradict a stated purpose of the Information Act and violate a primary rule of statutory interpretation. Reliance Electric Co. v. Emerson Electric Co., 404 U.S. 418, 424, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972).

During the debate of the Information Act on the floor of the House a question arose with respect to the application of Exemption (3) to information supplied to the Bureau of Census under the statutory provisions requiring such information to remain confidential. 13 U.S.C. § 9 (1970). The Chairman of the House subcommittee in charge of the legislation stated that the census information was within Exemption (3) as material "specifically exempted from disclosure by statute." 112 Cong.Rec. 1346 (1966). Section 9 of the census statute, however, had previously been interpreted by Judge Weinfeld of the United States District Court for the Southern District of New York in United States v. Bethlehem Steel Corp., 21 F.R.D. 568 (S.D.N. Y.1958), where he held in a comprehensive opinion that, "the language of the [census] statute is clear and unambiguous," *Id.* at 569–570, and in it "Congress has recognized and created an express privilege" of confidentiality with specific statutory exceptions. *Id.* at 570, 571.

The Senate Report reflects the House's concern over governmental misuse of the APA and expresses as follows the purpose of the Information Act:

> Innumerable times it appears that information is withheld only to cover up embarrassing mistakes or irregularities and the withholding justified by

such phrases in section 3 of the Administrative Procedure Act as—"requiring secrecy in the public interest," or "required for good cause to be held confidential."

> It is the purpose of the present bill to eliminate such phrases, to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language and to provide a court procedure by which citizens and the press may obtain information wrongfully withheld. It is important and necessary that the present void be filled. It is essential that agency personnel, and the courts as well, be given definitive guidelines in setting information policies. Standards such as "for good cause" are certainly not sufficient.

S.Rep.No.813, 89th Cong., 1st Sess. at 3 (1965).

C. Aware as we are of the thoughts of others adduced to support appellants' position, we are nevertheless persuaded that they should not control the court's construction of the language before us. An overriding consideration is the reasonably plain statutory language [7] of Congress in Exemption (3), considered with the basic purpose of the Information Act calling for narrow, though, of course, not artificially so, application of its non-disclosure exemptions. Vaughn v. Rosen, *supra.* Moreover, further consideration of the relationship between the Information Act and the earlier Aviation Act, now to be outlined in Part IV, we think is persuasive of the correctness of the decision of the District Court.

## IV

Both statutes—section 1104 and the Information Act—have to do with disclosure of government information. They are *pari materia* and should be construed together so as to effectuate the over-all congressional policy. This approach is peculiarly appropriate in a

7. Gemsco, Inc. v. Walling, 324 U.S. 244, 260, 65 S.Ct. 605, 89 L.Ed. 921 (1945); Addison v. Holly Hill Co., 322 U.S. 607, 616–617, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944).

case involving section 1104, in which the final statutory standard upon which disclosure turns is the public interest. The Information Act is now the basic congressional expression of the public interest with respect to information in the possession of the federal government. When a previously enacted statute, such as 1104, has provided such a standard the subsequently enacted and comprehensive Information Act, in the varied circumstances enumerated in its provisions, is the guide to the congressional intent with respect to the public interest. This view is confirmed indirectly by the Supreme Court in *Mink.* The Court there discussed the legislative development culminating in the replacement by the Information Act of section 3 of the Administrative Procedure Act. 5 U.S.C. § 1002 (1964). That section, the Court stated, fell "far short of its disclosure goals and came to be looked upon more as a withholding than a disclosure statute."[8] Continuing, the Court said that section 3 was:

> . . . plagued with vague phrases, such as that exempting from disclosure "any function of the United States requiring secrecy in the *public interest.*" (Emphasis added.)

410 U.S. at 79.

 Accordingly, we believe it follows that the public interest standard of section 1104 is not a specific exemption by statute within the meaning of Exemption (3) of the Information Act.

We are not unmindful that many important regulatory statutes, such as the Federal Communications Act and the Natural Gas Act invest agencies of government with authority to act upon the basis of the public convenience and necessity, or the public interest; but in so legislating Congress has guided action under these general standards by requiring hearings, with findings supported by evidence directed to the decisional catalyst so phrased, followed by the right of judicial review of the validity, procedur-

ally and substantively, of the action taken. Nothing of the sort is attached to a determination of non-disclosure under section 1104. Even were we in error in holding action under that provision not within Exemption (3), such action in our opinion would require that the courts build upon the section at least procedural safeguards for review of the reasons for the determination, supported by findings to enable the court to appraise, as under the Information Act, the validity of non-disclosure.

V

 In holding that Exemption (3) does not prevent disclosure of the SWAP reports we realize that appellants desire to press their claim under Exemption (7), especially in light of our decision in Weisberg v. Department of Justice, 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973) (en banc). Therefore, we affirm the summary judgment for appellees insofar as appellants rely upon Exemption (3) but remand the case for consideration of Exemption (7) or any other defense to disclosure appellants may raise except Exemptions (1) and (3).

Order granting summary judgment to appellees on Count I is affirmed, and case in other respects remanded to District Court for further proceedings not inconsistent with this opinion.

ROBB, Circuit Judge, dissenting:

The Federal Aviation Administration is required by law "to promote safety of flight of civil aircraft in air commerce" by the issuance of standards, rules and regulations. 49 U.S.C. § 1421(a). Under 49 U.S.C. § 1425(b) the Administrator is also required to employ inspectors who shall advise and cooperate with air carriers in the inspection and maintenance of aircraft, aircraft engines, propellers, and appliances used in air transportation. To carry out these mandates

---

8. *See* Bristol-Myers Co. v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970).

the FAA developed the Systemsworthiness Analysis Program (SWAP).

SWAP investigative teams composed of highly trained and experienced FAA inspectors make periodic visitations to certified air carriers to inspect and analyze their maintenance and safety operations. A SWAP inspection covers the entire operation of the carrier being studied, including such matters as flight crew training, non-flight crew training, airport and communications facilities, flight operations policies and procedures, air carrier records and crew scheduling, and check airmen and examiners. *See* SWAP Handbook, FAA Order 8000.3C. The investigative team works in close cooperation with airline management to find any area of maintenance, operations, management or performance which needs improvement. To facilitate cooperation and the full and frank disclosure by the airline upon which the system depends, the SWAP program operates with the understanding between the airlines and the FAA that the contents of SWAP reports will not be released to the public. FAA Order 8000.3C para. 204. The findings of a SWAP inspection team are disclosed to the operator under examination, to enable that operator to discuss them intelligently, but they are not made available to any other operator.

Against this background the airlines, invoking section 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504, objected to the public disclosure of SWAP reports. The airlines stated:

As has been set forth by the FAA in a memorandum to its regions dated February 7, 1967, "The SWAP Program requires a cooperative effort on both the part of the company and FAA if it is to work effectively." Information freely given to the FAA SWAP team by air carrier management personnel is not specifically required by the FAR's [Federal Aviation Regulations].

If public disclosure of the SWAP reports were made, the interests of aviation safety would be in danger of being subordinated in some degree to legal considerations in the presentation of information to the FAA. The present practice of nonpublic submissions, which includes even tentative findings and opinions as well as certain factual material, encourages a spirit of openness on the part of airline management which is vital to the promotion of aviation safety—the paramount consideration of airlines and government alike in this area.

(J.A. 100.)

The Administrator sustained the objection, holding that disclosure of SWAP reports "would adversely affect the interests of the airline being investigated and is not required in the interest of the public." I think the Administrator's ruling was justified by exemption (3) of the Freedom of Information Act, 5 U.S.C. § 552(b)(3).

Congress did not intend the Freedom of Information Act to repeal all other statutes which restricted public access to government records. Thus, Senator Long, Chairman of the Senate Judiciary Committee's Subcommittee on Administrative Practice and Procedure, and a leading proponent of the Freedom of Information Act stated:

It should be made clear that this bill in no way limits statutes specifically written with the congressional intent of curtailing the flow of information as a supplement necessary to the proper functioning of certain agencies.

Hearings on S. 1166 and S. 1663 (in part), Before the Subcomm. on Administrative Practice and Procedure of the Senate Judiciary Committee, 88th Cong., 1st Sess. 6 (1963). Again, in explaining exemption (3) the House Committee on Government Operations noted that there are *"nearly 100 statutes or parts of statutes which restrict public access to specific Government records. These would*

not be modified by the public records provisions of S. 1160." (H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10, U.S.Code Cong. & Admin.News 1966, p. 2427.) (Emphasis added.) Commenting on the House Report the Attorney General's memorandum on the Public Information Section of the Administrative Procedure Act (June 1967) stated:

The reference to "nearly 100 statutes" apparently was inserted in the House report in reliance upon a survey conducted by the Administrative Conference of the United States in 1962. This survey concluded that there were somewhat less than 100 statutory provisions which specifically exempt from disclosure, prohibit disclosure except as authorized by law, provide for disclosure only as authorized by law, or otherwise protect from disclosure. The reference therefore indicates an intention to preserve whatever protection is afforded under other statutes, *whatever their terms.* (Emphasis added.)

Section 1104 is tailored to the needs and problems of the Federal Aviation Administration—needs and problems which are well illustrated by this case. I cannot believe that this specific statute was overridden or repealed by the general terms of the Freedom of Information Act. The earlier and specific statute should prevail over the later more general enactment. In particular, the later act should not be read to delete the "public interest" standard from every disclosure statute in which it appears— including section 1104.

The Circuit Court of Appeals for the 5th Circuit has held that exemption (3) authorizes the Federal Aviation Administration to withhold information pursuant to section 1104, 49 U.S.C. § 1504. Evans v. Dept. of Transportation, 446 F.2d 821 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972). I agree.

I respectfully dissent.