**NEAL–COOPER GRAIN COMPANY et al., Plaintiffs,**

v.

**Henry A. KISSINGER, Individually and As Secretary of State of the United States, et al., Defendants.**

**Civ. A. No. 74–1365.**

United States District Court, District of Columbia.

Oct. 11, 1974.

---

William D. Outman, II, Washington, D. C., for plaintiffs.

Paul M. Tschirhart, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM-ORDER

GASCH, District Judge.

This is an action seeking mandamus and injunctive relief against Henry A. Kissinger, individually and as Secretary of State; William E. Simon, individually and as Secretary of the Treasury; and Vernon D. Acree, individually and as Commissioner of Customs of the United States. It seeks to prevent disclosure by the Customs Service of certain information to the Mexican Government. The matter is now before the Court on plaintiffs' motion for a preliminary injunction. Plaintiffs' motion for a temporary restraining order was previously denied by the Motions Judge of this Court.[1]

## THE FACTS

Plaintiffs herein are Neal-Cooper Grain Company, an Illinois corporation, and Mr. Albert Louis Hastings, an individual, of Brownsville, Texas. Neal-Cooper Grain Company (Neal-Cooper) is engaged in the importation of certain goods and commodities from Mexico.[2]

1. September 16, 1974, by Judge Pratt, in open Court.

2. Although these goods and commodities were not specifically identified in the complaint, it became apparent at the hearing that the material in question is fertilizer.

Mr. Hastings is Vice-President of Daniel B. Hastings, Inc., a licensed customshouse doing business in Customs District 23 (Brownsville, Texas). Pursuant to his business duties and to the wishes of Neal-Cooper, his client, Hastings prepared and filed with the Customs Service certain documents which were required in order to obtain permission for the importation of fertilizer by Neal-Cooper. Additional information was later supplied at the request of the Customs Service.

Plaintiffs assert that the information provided to the Customs Service is confidential because it contains commercial or financial information or relates to trade secrets, processes, operations, style of work, identity, confidential statistical data, amount or source of income and profit, loss and expenditure. Plaintiffs contend that this data is protected from disclosure by 18 U.S.C. § 1905 (1970) [3] and by 19 C.F.R. § 103.10(c), (d), (g).[4] They claim that dissemination of this

3. 18 U.S.C. § 1905 (1970):

Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

4. 19 C.F.R. § 103.10:

United States Customs Service opinions, orders, rulings, statements of policy, interpretations, and records generally may be inspected, copied, or otherwise obtained unless they relate to the following:

\* \* \* \* \*

(c) *Matters exempted from disclosure by statute.* Information specifically exempted from disclosure by statute. This includes information pertaining to trade secrets, business operations, and commercial or financial information of importers, exporters, and other persons who transact Customs business (18 U.S.C. 1905).

(d) *Privileged or confidential information.* Trade secrets and commercial or financial information obtained from any person and privileged or confidential. The information contained in invoices, entries,

vessel manifests, export declarations, official reports of investigating officers, records pertaining to the licensing of and the revocation or suspension of a license of a customhouse broker, and other papers or documents filed with Customs officers for any official purpose which contain trade secrets, or commercial or financial information, is exempt from disclosure, except for the purpose for which such documents are required to be filed. However, information contained in vessel manifests and summary statistical reports of importations and exportations are available for inspection and copying by certain representatives of the press to the extent permitted by § 103.11. Further importers and exporters or their duly authorized brokers, attorneys, or agents, may be permitted to examine manifests with respect to any consignment of goods in which they have a proper and legal interest as principal or agent, but shall not be permitted to make any general examination of manifests or make any copies or notations from them except with reference to the particular importation or exportation in which they have a proper and legal interest. Information obtained in connection with investigations under the Antidumping Act, 1921, as amended (19 U.S.C. 160 et seq.), is available for disclosure under the provisions of § 153.23 of this chapter.

\* \* \* \* \*

(g) *Certain investigatory files.* Investigatory files compiled for law enforcement purposes except to the extent available by law to a private party. Some examples of records included in this category are investigative reports relating to: The value and classification for tariff purposes of imported merchandise; suspected violations of section 592 of the Tariff Act of 1930, as amended (19 U.S.C. 1592); allegations of the importation of merchandise into the United States in contravention of

information to other persons or organizations is prohibited.

The Customs Service, however, has released some of this information to officers or agents of the Government of Mexico.[5] The Government states that this disclosure was undertaken in response to a request from Mexican authorities made pursuant to an informal information-exchange agreement concluded at meetings between high officials of the Customs Services of the United States and Mexico.[6] At the hearing it developed that this agreement was not embodied in a formal treaty or other international agreement, although it may have been reduced to written form.[7]

In response to the motion for preliminary injunction, the Government filed an opposition and a motion to dismiss the action, asserting a three-fold attack upon the claim. First, the Government says that the disclosure of the documents and information is not prohibited by law but is in fact authorized by the Freedom of Information Act. Second, it says that this release of information lies beyond the review of this Court since it occurs under an informal international agreement. The matter is thus one of foreign relations, and the foreign relations of the United States are entrusted solely to the Executive Branch. Third, the Government raises the defense of unclean hands, and alleges that it operates to bar all relief herein.

### THE MOTION TO DISMISS

■ The Government motion to dismiss was filed and served upon the plaintiffs on the date of the hearing in this case. Plaintiffs were of course not prepared to respond to the motion at the hearing. The time specified by our Rules as that in which to file opposition to a motion has not yet elapsed.[8] In these circumstances, the Court would normally be unwilling to consider the motion to dismiss.[9] At argument the Government acceded to this position but pointed out that the Court could dismiss the matter *sua sponte* if it found that it had no subject matter jurisdiction owing to the involvement of foreign relations.

■■ It is true beyond peradventure that the conduct of our foreign relations is solely in the hands of the President. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 319, 57 S.Ct. 216, 81 L.Ed. 255 (1936). This power extends, of course, to the making of treaties with the advice and consent of the Senate;[10] but it also extends to the making of international agreements which do not constitute treaties in the constitutional

the countervailing duty provision of section 303 of the Tariff Act of 1930 (19 U. S.C. 1303); and the importation of certain books, pictures, or other articles in contravention of the so-called "obscenity statute" (19 U.S.C. 1305). This listing is intended to be illustrative only, and is not intended to be, and is not, an exhaustive listing.

5. The Government admits the disclosure to Mexican authorities of certain information regarding the fertilizer. Affidavit of John Holden Dennis, Director of the General Investigations Division, Office of Investigations, United States Customs Service, at 2–6 [hereinafter cited as *Dennis Affidavit*]. The Government intends to continue such disclosure insofar as such action does not conflict with law or court order. *Id.* at 6; Affidavit of Glenn Robert Dickerson, Assistant Commissioner (Operations), United States Customs Service, at 3 [hereinafter cited as *Dickerson Affidavit*]. The information disclosed to the Mexican authorities may have included data gathered by Customs Special Agent Wright, who visited Hastings to review his files and to ask certain questions regarding fertilizer importation. *Dennis Affidavit* at 4.

6. *Dickerson Affidavit* at 2.

7. No written document was produced at the hearing. The Government indicated that the existence of such a document is not presently clear.

8. Civil Rule 1–9(d). The Rule provides for 10 days in which to file opposition.

9. Since the motion to dismiss relies in part upon the affidavits filed, and thus goes beyond the pleadings, it is a speaking motion and is properly to be considered a motion for summary judgment. Fed.R.Civ.P. 12(b), (c).

10. U.S.Const. art. II, § 2.

sense.[11] This agreement, however, was not made by the President but by representatives of the Customs Service. The question arises whether these representatives had the appropriate authority, delegated from the President, to conclude such an agreement. If they did not, then the accord in question may not constitute an international agreement in the legal sense.[12] Hence the situation here may not rise to the level of "foreign relations." In any event, the Court will reserve on the motion to dismiss in order to permit plaintiffs an opportunity to reply thereto.

## THE PRELIMINARY INJUNCTION

### A. Standard for a Preliminary Injunction.

■ The Court comes now to the preliminary injunction. In considering this, the Court is guided by the standards set forth in Virginia Petroleum Jobbers Assoc. v. Federal Power Comm., 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). There the Court of Appeals stated the four factors which should influence a court's determination of the propriety of extraordinary relief. These are: 1) whether the petitioner has made a strong showing that it is likely to prevail on the merits; 2) whether the petitioner has shown that irreparable harm would follow the denial of the relief requested; 3) whether the issuance of an injunction would substantially harm other parties interested in the proceedings; and 4) where lies the public interest.[13]

### B. Chance of Prevailing on the Merits.

(1) The Freedom of Information Act.

Turning first to the likelihood of plaintiffs' prevailing on the merits, it is the contention of plaintiffs that 18 U.S. C. § 1905 (1970) prohibits disclosure of information such as was furnished by them to the Customs Service unless such disclosure is otherwise authorized by law. They further contend that disclosure is prohibited by 19 C.F.R. § 103.-10(c), (d), (g).[14] The Government contravenes this, saying that the Freedom of Information Act[15] is such "other law" authorizing disclosure and that the plaintiffs are in any event barred from relief by the "clean hands" doctrine.

■ The courts in this Circuit appear to consider that the Freedom of Infomation Act (FOIA) would provide the legal authorization to disclose within the meaning of 18 U.S.C. § 1905. Thus, in Robertson v. Butterfield, 162 U.S.App. D.C. 298, 498 F.2d 1031, the Court said:

> 18 U.S.C. § 1905 is a criminal statute prohibiting unauthorized disclosure of any information by a federal employee. There is nothing in the section which prevents the operation of the Information Act. It does not fall within the ambit of exemption 3. [Citations omitted].[16]

---

11. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936).

12. See Restatement (Second), Foreign Relations Law of the United States, § 115(a) (1965). The Restatement defines an international agreement as one made between states or international organizations. Id. The power to make such an agreement is determined by the actual authority of the negotiating person or agency under the domestic law of the country which he represents, subject to certain exceptions concerning situations of apparent authority. Id. § 123. In the United States such authority proceeds from the President. It follows that, if the Customs Service was acting beyond its proper authority, the accord reached may not be an international agreement.

13. 104 U.S.App.D.C. at 110, 259 F.2d at 925.

14. The texts of 18 U.S.C. § 1905 and of 19 C.F.R. § 103.10(c), (d), (g) are set forth supra at notes 3 and 4 respectively.

15. 5 U.S.C. § 552 (1970).

16. 162 U.S.App.D.C. at 300, 498 F.2d at 1033 n. 6. The Court was considering whether 49 U.S.C. § 1504 (1970) was a statute specifically exempting material from disclosure within the meaning of exemption 3 of the FOIA (5 U.S.C. § 552(b)(3) (1970)). It concluded that § 1504 was not such a stat-

Similarly this Court has twice concluded that Section 1905 does not operate to hinder the FOIA.[17] Indeed, M. A. Schapiro & Co. v. Securities Exchange Comm.[18] seems to imply directly that the FOIA is "other law" which would authorize disclosure of material that might otherwise be subject to 18 U.S.C. § 1905.[19]

The appropriate conclusion appears to be that the FOIA would permit the disclosure of this information unless an exemption to disclosure is applicable. Plaintiffs contend, however, that the FOIA is not applicable at all to this case since disclosure is not sought here but is sought to be prevented. To support this theory, plaintiffs rely upon the decision of this Court in Charles River Park "A", Inc. v. Department of H. U. D., 360 F.Supp. 212 (D.D.C.1973).

In *Charles River*, the Court considered a suit by a corporation seeking to prevent disclosure by HUD of certain information to third parties who had requested it pursuant to the FOIA.[20] There, too, the plaintiffs apparently sought to interpose the prohibition of 18 U.S.C. § 1905. The defendant agency argued alternatively both that the FOIA compelled disclosure and that the FOIA had no application to the case.[21] The Court held that the FOIA did not apply to the case because it was passed for the benefit of parties seeking disclosure, apparently concluding that it thus had no relevance to a claim seeking to bar disclosure.[22]

■ *Charles River* was one of the first "reverse-FOIA" suits to come to the courts. Developments since that time have, in the opinion of the Court, made it clear that the FOIA does apply to such matters. In National Parks & Conservation Assoc. v. Morton,[23] plaintiffs sought to compel disclosure of information which had been supplied to the government on a confidential basis. The District Court had granted summary judgment to defendant on the basis of the confidentiality exemption to the FOIA. The Court of Appeals remanded, saying that the lower Court must examine the material to determine if the informational disclosure would either impair the Government's ability to obtain information in the future or harm the competitive position of the supplier of information.[24] In so doing, the Court recognized both that the policy of the FOIA was to encourage disclosure and that the purpose of the confidentiality exemption was to protect the rights of suppliers of information.[25] After *Morton*, there would seem little doubt that the FOIA does apply to a suit seeking to prevent disclosure.[26]

ute as would be within exemption 3. In the discussion, the Court gave examples of several statutes, including 18 U.S.C. § 1905, which it would not consider to be within the exemption.

17. Sears, Roebuck and Co. v. General Services Admin., 384 F.Supp. 996, Civil Action No. 2149–73 (D.D.C. filed Sept. 10, 1974) ; M. A. Schapiro & Co. v. Securities Exchange Comm., 339 F.Supp. 467, 469–470 (D.D.C. 1972).

18. 339 F.Supp. 467 (D.D.C.1972).

19. The Court said :
 The Securities and Exchange Commission alleges that 18 U.S.C. § 1905 prevents disclosure of [certain] information. That statute, however, does not prevent disclosure of information that is authorized to be disclosed under other laws.

339 F.Supp. at 469–470.
The Court went on to hold that the information in question must be disclosed.

20. 360 F.Supp. at 213.

21. *Id.*

22. *Id.* The Court proceeded to find that the information in question was confidential within the meaning of 18 U.S.C. § 1905, a fact conceded by the defendants. *Id.* & n. 1.

23. 162 U.S.App.D.C. 223, 498 F.2d 765 (1974).

24. 162 U.S.App.D.C. at 228, 498 F.2d at 770.

25. 162 U.S.App.D.C. at 225–228, 498 F.2d at 767–770.

26. Indeed, this Court has so applied the FOIA. Sears, Roebuck & Co. v. General Services Admin., 384 F.Supp. 996, No. 2149–73 (D.D.C. filed Sept. 10, 1974).

■ The Court must now decide whether the request herein, made by or on behalf of the Mexican Government, may be a request within the purview of the FOIA. The Act states, in relevant part:

> [E]ach agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available *to any person.*[27]

A person is:

> [A]n individual, partnership, corporation, association, or public or private organization other than an agency.[28]

A foreign government or an instrumentality thereof would appear to be a "public or private organization" within the terms of the Act. This conclusion is supported by the fact that the Customs Regulations implementing disclosure policy under the FOIA clearly contemplate requests from foreign governments.[29]

The question thus resolves itself into whether disclosure is inappropriate under the Act or its implementing regulations. The exemptions of the FOIA are to be narrowly construed. Robertson v. Butterfield, 162 U.S.App.D.C. 298, 299, 498 F.2d 1031, 1032 (1974); Vaughn v. Rosen, 157 U.S.App.D.C. 340, 343, 484 F.2d 820, 823 (1973), cert. denied sub. nom. Rosen v. Vaughn, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Plaintiffs here rely on exemptions (b)(3) and (b)(4), which read as follows:

> (b) This section does not apply to matters that are—
>
> \* \* \* \* \* \*

> (3) specifically exempted from disclosure by statute;

> (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential; . . . .[30]

■ The "ordinary meaning of the language of Exemption (3) is that the statute therein referred to must itself specify the documents or categories of documents it authorizes to be withheld from public scrutiny."[31] The law in this Circuit, as stated *supra*, appears to be that 18 U.S.C. § 1905 is not sufficiently specific to come within Exemption (3).[32] No more need be said on that score.

■ Exemption (4) is the remaining support on which plaintiffs rely. The terms of the statute, as set forth *supra*, require that information properly within the exception must relate to trade secrets and commercial or financial information. It is not convincingly asserted that the material here is "trade secrets"; but it seems clear that the information provided to Customs did relate to commercial or financial information.[33] However, the statute requires the material to be "privileged or confidential" if it is to be within Exemption (4).

Information is confidential within the meaning of the exemption only if disclosure is likely to have either of the following effects: 1) impairment of the Government's ability to obtain necessary information in the future or 2) causation of substantial harm to the competitive position of the person from whom the information was obtained.[34] Since the information in question, or most of

---

27. 5 U.S.C. § 552(a)(3) (1970) (emphasis added).

28. 5 U.S.C. § 551(2) (1970). "Agency" means an authority of the Government of the United States and would not include a foreign authority. 5 U.S.C. § 551(1) (1970).

29. *See* 19 C.F.R. § 103.2(g).

30. 5 U.S.C. § 552(b)(3), (4) (1970).

31. Robertson v. Butterfield, 162 U.S.App.D.C. 298, 299, 498 F.2d 1031, 1032 (1974).

32. *See supra* notes 16–19 and accompanying text.

33. Affidavit of Albert Louis Hastings, 2–3.

34. National Parks & Conservation Assoc. v. Morton, 162 U.S.App.D.C. 223, 770, 498 F.2d 765, 770 (1974).

it, is required by law to be furnished to the Government, there is little danger that disclosure will impair the Government's ability to obtain this data in the future.

■ It is the duty of this Court to determine if any of the materials in question are confidential within the meaning of the Act.[35] Yet the papers before the Court are devoid of any showing of confidentiality beyond certain bare assertions found in the complaint and in Mr. Hastings' Affidavit. This Court cannot conclude from the present record that the information is confidential or is likely to be shown to be so. Hence, the Court cannot consider it likely that these materials will be shown to be within Exemption (4).

■ Plaintiffs also contend that disclosure is barred by the Customs Regulations. The Regulations set forth in 19 C.F.R. § 103 were promulgated pursuant to the command of the FOIA and set forth the procedures by which information may be obtained from the Customs Service. Certain of these Regulations set forth classes of documents which are exempt from disclosure and on certain subsections of the exemption regulations plaintiffs rely.[36] The Regulations, however, clearly state that the Customs Service will disclose information which it may lawfully withhold if such disclosure is in the public interest.[37] Moreover, in the discussion *supra*, the Court concluded that the law is to the effect that 18 U.S.C. § 1905 would not be a statute within exemption (3) and would not impair the working of the FOIA and that there has been no showing of confidentiality within the meaning of the statute. The Court thinks that the Customs Service has discretion to re-lease its own investigatory files, at least where there is no real showing that the contents thereof would harm innocent parties. Accordingly, reliance on 19 C.F.R. § 103.10 would seem to be misplaced.

■ Plaintiffs alleged at argument that disclosure should be halted because the Customs Service had not complied with its own Regulations requiring all foreign government requests to be forwarded to Washington for a decision on disclosure. 19 C.F.R. § 103.2(g). They assert that these regulations have the force of law and govern the activities of the Service. While this is doubtless true in regard to those regulations which govern the activities of the Service in relation to outside parties, the Court has difficulty in concluding that a regulation governing purely internal activities and processes cannot be waived. This is not, for example, a regulation which affects the method used to compute duties on certain objects. It is merely an internal guideline which delineates the appropriate steps in the decision process. In this connection the Court also notes: First, the statement of the Government at argument that the request may have been forwarded by telephone to Washington and second, that the agreement to honor such requests which was made between high-level representatives of the two Customs Services [38] may well constitute a blanket approval from headquarters of such requests.

### (2) Clean Hands.

■ As has been seen, the chance of plaintiffs successfully establishing their statutory grounds for relief does not appear to be high. Even

---

35. *Id.*, 162 U.S.App.D.C. at 228–229, 498 F.2d at 770–771.

36. 19 C.F.R. § 103.10(c), (d), (g). The text of these sections is set forth *supra*, at note 4.

37. 19 C.F.R. § 103.0. This is in accord with the general view that the exemptions listed in the FOIA authorize nondisclosure but do not require it. Sears, Roebuck & Co. v. General Services Admin., 384 F.Supp. 996, No. 2149–73 (D.D.C. filed Sept. 10, 1974), Slip op. at 6; Davis, Administrative Law Treatise, § 3A.5 (1970 Supp.).

38. *Dickerson Affidavit* at 2.

should they do so, however, they would then have to surmount the defense of "unclean hands" which is interposed by the Government. The doctrine of "unclean hands" is not a rigid one. It is one committed to the sound discretion of the court and its purpose is to advance justice. Precision Instrument Mfg. Co. v. Automotive Maint. Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944). The doctrine finds its roots in the ancient idea that equity is an instrument for affirmatively enforcing the requirements of conscience and good faith. *Precision Instrument Mfg. Co.,* supra, 324 U.S. at 814, 65 S.Ct. 993. It closes the doors of equity to one who has acted inequitably or with bad faith relative to the matter in which he seeks relief. *Id.* Equity does not require blamelessness in regard to other matters, but does require that one seeking relief shall have acted fairly and without fraud or deceit as to the controversy at issue. *Id.* 324 U.S. at 814–815, 65 S.Ct. 993.

Here the Government asserts that the fertilizer in question may have been imported by plaintiffs in violation of Mexican law prohibiting the export of such commodities.[39] The Government also asserts that it is now investigating possible criminal violations of United States law arising from the same importation. The Court thinks that these facts, if established, are sufficiently related to this claim as to raise effectively the defense of "unclean hands."

Plaintiffs cite Johnson v. Yellow Cab Transit Co., supra, as a case "on all fours" with the present case. They claim that *Johnson* stands for the proposition that "unclean hands" cannot be successfully urged where it is based on unproved allegations of violations of law. The Court does not view *Johnson* as controlling in the circumstances of this case.

In *Johnson,* Oklahoma authorities had seized a shipment of liquor which was in transit across the state. The shipment was consigned to the officers club at the Government reservation of Ft. Sill. The District Court, after full trial, enjoined the officials and ordered the liquor returned. The Supreme Court affirmed on the basis that: 1) Federal law controlled on Ft. Sill and there were no Federal anti-liquor laws of any kind; 2) the question whether state "dry laws" controlled in the absence of Federal law was a highly debatable one; 3) the party plaintiff before the Court was not one whose interest was really engaged in the determination of this debatable point and the truly interested parties had not been joined; 4) hence, there was no clear violation of law and no fair means of finally determining the issue by litigation.

In the present case, the Court is considering a preliminary injunction and must estimate chances of success. Here the Government has stated, by means of Mr. Dennis' affidavit, that Mexican law prohibits exportation of fertilizer of the type here involved. The affidavit also alleged that the fertilizer may have been sold to Mexico pursuant to the AID program and may have been stolen from the Mexican Government. Because of the press of time, the Government was unable to produce the Mexican law in question or establish beyond doubt the theft of AID materials. The existence of the Mexican law, however, has not been effectively contravened.[40] In our case, should these assertions be shown at trial to be true, serious violations of foreign law would be established. This would distinguish the case from *Johnson.* In the circumstances, the Court must conclude that there is little hope of surmounting the defense.

In summation, then, the Court deems it probable that the FOIA will apply here and will authorize disclosure of the

---

39. *Dennis Affidavit* at 3.

40. At argument, plaintiffs' counsel said he was unaware of such a law and had not seen it.

information. Even if it does not, the defense of "unclean hands" may well preclude relief. Plaintiffs have not shown a reasonable probability of prevailing on the merits.

### C. *Irreparable Harm.*

 Plaintiffs have not made a convincing showing of irreparable harm. Mr. Hastings, in his affidavit, states that release of the information will threaten his livelihood by causing customers to cease lawful import activities. The complaint contains only a bare allegation of irreparable harm. At argument counsel stated that the revelation of price, source of supply and other information in the documents was irreparable harm. Counsel urged that it would create a "poor climate" for Hastings' business and that the mere violation of the law is an irreparable harm.

Counsel's statements ignore the fact that disclosure will be to neither public nor competitors but to an investigatory agency of another government. This would seem unlikely to injure the honest business of anyone. The Court is also at a loss to understand how cooperation in an investigation of a possible violation of law could harm Hastings. Dismay should result only to dishonest individuals who fear disclosure. Finally, the Court cannot agree that there has been a violation of law, much less that any violation has wreaked injury on plaintiffs.

### D. *Balancing the Harms.*

 In balancing the harms which might be inflicted by the grant or denial of a preliminary injunction, the Court notes that the grant of the injunction might well cripple the Mexican investigation and seriously embarrass relations between the two Customs Services and perhaps embarrass relations between the two Governments. In addition, an injunction might well cause the disruption of the flow of information to the Customs Service from Mexico—information which is being used to investigate possible violations of United States law.[41]

Against this the Court has only vague allegations that the refusal of an injunction might cause the loss of some customers and a general "poor climate" for Hastings' business. The scale thus tips toward denial of an injunction.

### E. *Public Interest.*

 It seems to the Court that the public interest here is on the side of the Government. The public has an interest in the proper functioning of its own customs laws, a functioning to which the exchange of information with Mexico contributes. The public has an interest in not permitting the violation with impunity of the export and other laws of a sister Republic by citizens or businesses of the United States. The public interest, then, militates against the grant of this injunction.

### CONCLUSION AND ORDER

The Court having determined, for the reasons foregoing, that a preliminary injunction should not issue in this case, it is by the Court this 11th day of October, 1974,

Ordered that plaintiffs' motion for a preliminary injunction be, and the same hereby is, denied.

41. *Dennis Affidavit* at 3, 5–6.