**The BABCOCK & WILCOX COMPANY, Plaintiff,**

v.

**Donald RUMSFELD, the Secretary of Defense, and J. William Middendorf, the Secretary of the Navy, Defendants.**

**Civ. A. No. C 75–239 A.**

United States District Court, N. D. Ohio, E. D.

March 3, 1976.

Herbert L. Fenster, Thomas L. Patten, Kenneth W. Weinstein, Sellers, Conner & Cuneo, Washington, D. C., Norman S. Carr, Brouse & McDowell, L.P.A., Akron, Ohio, for plaintiff.

Richard French, Asst. U. S. Atty., Cleveland, Ohio, Sandra Wien, Civ. Div., Dept. of Justice, Washington, D. C., for defendants.

## ORDER

CONTIE, District Judge.

This action is before the Court upon defendants' motion to dismiss or, in the alternative, for summary judgment. Upon consideration and for the reasons stated below, said motion shall be denied.

On August 18, 1975, plaintiff Babcock & Wilcox Company (hereinafter B&W) initiated this action, seeking a declaratory judgment and injunctive relief. The jurisdiction of this Court is assertedly invoked pursuant to Section 10 of the Administrative Procedure Act (hereinafter APA), 5 U.S.C. § 701 et seq.; 28 U.S.C. § 1331; the Freedom of Information Act, as amended, 5 U.S.C. § 552; the Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; and 18 U.S.C. § 1905.

Essentially, plaintiff alleges in its complaint that defendants intend to disclose certain documents and materials pursuant to a request under the Freedom of Information Act (hereinafter FOIA). Said request is assertedly from one of plaintiff's competitors. The documents intended to be disclosed are allegedly confidential, in that release thereof would substantially harm

plaintiff's competitive position. The subject documents allegedly consist of certain contractual terms, conditions, and agreements, as well as documents allegedly containing:

> "trade secrets; confidential statistical data; information relating to costs, prices, profits, income and expenditures; processes and techniques for operations of performance of work; information involved in the course of negotiations; and other proprietary data and information concerning contract performance." Complaint, ¶ 7.

Release of the subject documents has been postponed pursuant to a consent Order entered August 19, 1975.

The factual background of this action may be best stated by summarizing the relevant portions of the affidavit, submitted by defendants, of William B. Ferguson, Director of the Management and Support Division of the Contracts Directorate of the Naval Sea Systems Command. Mr. Ferguson states that the Naval Sea Systems Command is responsible for the procurement of propulsion systems for nuclear powered ships including D2G, S6G, and S8G design steam generators, pressurizers and reactor vessels including reactor vessel heads and thermal shields. Acquisition of said systems and components is accomplished through the placement of multimillion dollar government prime contracts with General Electric (hereinafter GE) and Westinghouse Electric Company (hereinafter Westinghouse). Pursuant to a standard subcontract clause contained in said prime contracts, see *Armed Services Procurement Regulation,* Section 7–203.8(a), Westinghouse and GE provided the Naval Sea Systems Command with advance notification of their intentions to subcontract part of the prime contract to B&W, including therein detailed information about B&W and the proposal. In all, it appears that since about 1963, GE and Westinghouse have subcontracted a total of 21 contracts to B&W.

On July 18, 1975, the Naval Sea Systems Command received a two-part request, dated July 14, 1975, from Milton F. Brown, Jr., an attorney. The first part of the request sought: ". . . subcontracts and purchase orders awarded to the Babcock & Wilcox Company during the period 1963 to the present for the production of Model D2G, S6G, and S8G steam generators, pressurizers, reactor vessels (including reactor vessel heads and thermal shields, . . ." under Navy Department prime contracts with GE and Westinghouse. Affidavit ¶ 9. The second part of the request sought "copies of any intra-agency or inter-agency memoranda or any other documents pertaining to the prices at which these subcontracts and purchase orders were awarded." Affidavit ¶ 9. The second part of the request was amended on September 12, 1975, during consideration of Brown's appeal from the original determination denying him full disclosure. The amendment deleted from the request "all copies of intra-agency or inter-agency memoranda or other documents pertaining to the prices at which the specified subcontracts and purchase orders were awarded except for one representative package . . ."

Upon learning of the request for information, B&W sent a letter to GE, dated July 30, 1975; a copy thereof was forwarded to the Naval Sea Systems Command. Therein, and through other letters, B&W specifically objected to the release of certain documents and supported said objections with various analyses of the relevant categories of information contained therein.

The record reveals that by letter dated October 10, 1975, defendants' representative notified Mr. Brown of their final determination on his FOIA request. Said document indicates that Brown will, unless plaintiff is successful in this action, be shown portions of each of the twenty-one (21) subcontracts awarded to plaintiff, subject to deletions. Also, said letter evidences defendants' choice of GE subcontract B–461 as the representative model sought in Brown's amendment to his request.

Ferguson's affidavit describes the documents in GE subcontract B–461 as consist-

ing of GE's May 12, 1972 letter justifying the recommendation of award of said subcontract to plaintiff and seeking the Contracting Officer's formal consent; 98 enclosures attached to said letter by GE, of which only 39 are presently in the Navy's files; and several short pre-award correspondence written during the Navy's consideration of the recommendation.

Having related the factual background of the action, Ferguson's affidavit continues with an analysis and discussion of the documents intended to be disclosed. Regarding the twenty-one (21) subcontracts, it is stated that they are unclassified, and that the Navy regards them as public documents. However, Ferguson also states, apparently contrary to some arguments advanced by defendants' counsel, that the Navy is required by statute and regulations not to disclose confidential information acquired by the Navy as a result of the solicitation and award of prime and subcontracts. Affidavit ¶ 14. The materials and provisions to be deleted from the subcontracts intended to be disclosed assertedly fall within said protective classification.

However, the remaining portions of the subcontracts will not, in Ferguson's opinion, harm plaintiff's competitive position. Ferguson describes said materials as including "such items as the fixed price incentive pricing formulae, the various negotiated terms and conditions of the contracts such as the extent of design responsibility assumed, or the delivery dates promised for manufactured items, [but they] do not contain trade secrets and confidential commercial or financial information."[1] Affidavit ¶ 16. However, other than a discussion of the fixed price incentive pricing formulae and very short discussions as to why such contractual terms as design responsibility and delivery dates are not confidential,

there is only cursory and incomplete identification and explanation in said affidavit of the remaining "various negotiated terms and conditions of the contract."

Ferguson's affidavit also discusses and analyzes the documents contained in the representative subcontract, GE B–461. It is related that the Navy considers the majority of these documents exempt from disclosure under the FOIA as confidential materials which, if released, would harm plaintiff's competitive position. The documents intended to be disclosed "include among other information, such information as the final negotiated fixed price incentive pricing formula. . . ., summary descriptions and full texts of final contractual terms and conditions, the draft General Electric subcontract form for requesting proposals, preliminary draft contract data requirements lists on Government forms, and miscellaneous correspondence." Affidavit ¶ 21. These materials also include various pre-award Navy correspondence on GE subcontract B–461. After a comparatively short discussion[2] of these types of information and documents, Ferguson concludes that they are not confidential. However, Ferguson states that none of the documents intended to be disclosed include actual costs or profit.

Plaintiff has submitted two affidavits of W. B. Beisel, Vice President of its Nuclear Equipment Division. In summary, said affidavits state that many portions of the documents in question would, if disclosed, harm plaintiff's competitive position. The second affidavit states that, upon review of the subject documents, defendants intend to release the following:

"(a) Actual and negotiated costs, actual and negotiated profit, actual and negotiated prices, and liquidation prices.

---

1. Ferguson explains fixed price incentive formulae in some detail. Essentially, such a formula consists of a projected cost and a projected profit. Due to the nature of the work, actual costs are unknown at the time of contracting; therefore, these formulae also include provisions sharing unexpected costs and profits.

2. As regards the pre-award correspondence, the affidavit incorporates discussion of the provisions and documents previously discussed, apparently inferring that the correspondence contains discussion of said documents and provisions and is therefore discloseable.

"(b) Negotiated general and administrative expenses.

"(c) The policy for design responsibility accepted by Plaintiff for various specific items and formulae for determining this responsibility.

"(d) Unique provisions dealing with risk and responsibility assumed by Plaintiff in regards performing certain specific technical tests, such as ultrasonic tests.

"(e) The policy for determining responsibility for delay in delivery.

"(f) Unique cash flow provisions.

"(g) The formulae used to increase or decrease Plaintiff's profit based upon actual costs of performance.

"(h) Unique agreements for resolution of disputes under the subcontracts." [3]

Defendants assert the following grounds for the instant motion:

1. "The Court lacks jurisdiction over the subject matter of this action;

2. "Plaintiff has failed to state a claim upon which relief might be granted . . .; and

3. "The scope of any judicial review of an agency decision to disclose information is whether the agency abused its discretion," and such standard has been demonstrated to be satisfied by the record as presently developed.[4]

## JURISDICTION

Of the jurisdictional statutes alleged in the complaint, two have support in case law. The courts have found jurisdiction under 28 U.S.C. § 1331, see *Westinghouse Electric Corporation v. Schlesinger*, 392 F.Supp. 1246 (D.C.Va.1974); *Hughes Aircraft Company v. Schlesinger*, 384 F.Supp. 292 (D.C.Cal.1974); and under the APA, *Charles River Park "A", Inc. v. Department of H. & U. D.*, 171 U.S.App.D.C. 286, 519 F.2d 935 (1975); *Sears, Roebuck & Co. v. General Services Admin.*, 384 F.Supp. 996 (D.C.D.C.1974), aff'd. 166 U.S.App.D.C. 194, 509 F.2d 527 (1974); *McCoy v. Weinberger*, 386 F.Supp. 504 (D.C.Ky.1971). One court has found jurisdiction under both statutes, *Burroughs Corporation v. Schlesinger*, 403 F.Supp. 633 (D.C.Va.1975). Other courts have proceeded to rule on the merits of the issues involved in these cases without expressly ruling on the jurisdictional issues in the reported decisions. See, e. g., *G. T. E. Sylvania Inc. v. Consumer Products Safety Commission*, 404 F.Supp. 352 (U.S.D.C.Del. 1975). Cf. *Neal-Cooper Grain Company v. Kissinger*, 385 F.Supp. 769 (D.C.D.C.1974).

As might be expected, defendants argue that neither statute constitutes a jurisdictional basis for this action. Included in said argument is the contention that this action is barred by the well established doctrine of sovereign immunity. Insofar as this doctrine assertedly bars jurisdiction under Section 1331, the Court concludes that the following comments of the court in *Hughes Aircraft Co. v. Schlesinger, supra,* at 294 adequately answers said contention: [5]

"The defendant contends that the doctrine of sovereign immunity prevents 28

---

**3.** Defendants have submitted a second affidavit of Mr. Ferguson. Said affidavit addressed Beisel's conclusions, and his listing and characterization of the various items just quoted. Essentially, this affidavit contains a short description of these items, and some reasons why said items are not confidential. Also, Ferguson therein denies that actual costs, and presumably actual profits, as well as plaintiff's negotiated general and administrative expenses will be disclosed. However, it appears that the government has, to some extent, reconsidered its position and will withhold more than originally planned.

**4.** Defendants also assert that "Plaintiff may not obtain redetermination of the Government's Decision to disclose Records." Finding said issue essentially a challenge to jurisdiction, said asserted ground shall not be separately addressed.

**5.** Defendants also argue that sovereign immunity bars this action under the holding in *International Eng. Co. Div. of A–T–O, Inc. v. Richardson*, 167 U.S.App.D.C. 396, 512 F.2d 573 (1975). However, that case involved a contract between the government and the plaintiff, and therefore application of the Tucker Act, 28 U.S.C. § 1346 was appropriate. However, the instant action is not one for breach of contract; therefore that case is inapplicable here.

U.S.C. § 1331 from providing the jurisdictional base. Sovereign Immunity does not bar this suit because the actions of the federal officers have been sufficiently alleged to be beyond their statutory powers and thus would not be the actions of a sovereign. See *Dugan v. Rank*, 372 U.S. 609, 621, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). In addition, if the requested relief is granted it '. . . would not expend itself on the public treasury or domain, or interfere with the public administration.' *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), nor will the processes of government be impeded. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)."

See also *Westinghouse Electric Corporation v. Schlesinger, supra*, at 1248; *Burroughs Corporation v. Schlesinger, supra*.

■ The Court is convinced that the proper jurisdictional basis for this action is the APA. It is apparent to this Court that the primary focus of this action is review of the decision of defendants to disclose certain materials. This is the type of situation in which review under the APA is allowable, and a specific statutory provision re-garding procedures and jurisdictional basis should and must be given priority over the generalized federal question section, 28 U.S.C. § 1331. For that reason, the Court adopts the reasoning of those cases finding jurisdiction under the APA.[6]

## SUMMARY JUDGMENT

Defendants' next contention is that the complaint fails to state a claim upon which relief can be granted. As materials outside the pleadings have been presented to and considered by the Court, the motion as to the remaining asserted grounds shall be considered as one for summary judgment.

■ Plaintiffs contend that the intended disclosure is violative of the FOIA, 18 U.S.C. § 1905 [7] and defendants' own regulations. The government forcefully argues that the FOIA does not prohibit disclosure of documents exempted thereby. However, as the Court concludes that material questions of fact remain unresolved as to the application of § 1905, it declines to rule on this question,[8] or on the application of the subject regulations herein, except insofar as said regulations relate to § 1905.

Section 1905 prohibits an officer or employee of the United States or of any de-

**6.** Defendant also contends that the APA does not itself constitute a jurisdictional grant of power. In support of this contention defendants cite, among other cases, the decision of the Sixth Circuit Court of Appeals in *Bramblett v. Desobry*, 490 F.2d 405 (6th Cir. 1974). While the Court recognizes a significant division in the cases on this question, the Court also notes that in the recent decision of the Sixth Circuit Court of Appeals in *Hunt v. Weinberger*, 6 Cir., 527 F.2d 544 (1975), the court found that at least within the context of review of the action of the Secretary of H.E.W., the APA does constitute a grant of jurisdictional authority. For the reasons enunciated in said opinion, and as this Court is unable to discern a valid reason why the rationale of that case should not be applied herein, the Court concludes that the APA does constitute a jurisdictional grant of authority to review this action. See also *Sears, Roebuck and Co. v. General Services Administration, supra*; cf. *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

Furthermore, the Court finds that the decisions sought to be reviewed herein are not "discre-tionary" within the meaning of the APA's proscription of review of such decisions. See *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

**7.** As the Court is of the opinion that review under the APA provides an adequate method for protection of plaintiff's rights herein, the Court concludes that implication of a private cause of action under 18 U.S.C. § 1905 is unnecessary herein. See *Charles River Park "A", Inc. v. Department of H. & U. D., supra*, at 941, n. 6.

**8.** This does not mean that the FOIA is irrelevant to the Court's decision. Clearly, if the subject documents are not within the Act's exemptions, which include both exemption 4 and § 1905 through exemption 3, cf. *Administrator, F. A. A. v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), then said documents must be disclosed and plaintiff's claims are meritless. See *Charles River Park "A", Inc. v. Department of H. & U. D., supra*, at 940.

partment or agency thereof from publishing, divulging, disclosing, or making known "in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person . . ."

■ Defendants argue that the "authorized by law" provision precludes application of § 1905 herein, because the regulations promulgated by the Secretary of Defense and by the Department of the Navy authorize disclosures of the subject documents. However, as said regulations may not limit the scope of § 1905, see *Charles River Park "A", Inc. v. Department of H. & U. D., supra*, at 942–943, the Court finds said argument meritless.

Although § 1905 is within the purview of exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), cf. *Administrator, F. A. A. v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), it also independently prescribes a mandatory mode of conduct. It thus has implications herein independent of the FOIA, for:

". . . if the disclosure of the information involved here would constitute a violation of a criminal statute [§ 1905], it would be an abuse of discretion for an agency to ignore such a statutory mandate and release the information." *Charles River Park "A", Inc. v. Department of H. & U. D., supra* at 942.

Cf. *Grumman Aircraft Engineer. Corp. v. Renegotiation Board*, 138 U.S.App.D.C. 147, 425 F.2d 578, 580, n. 5 (1970), rev'd. on other grounds 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Sears, Roebuck and Co. v. General Services Admin.*, 166 U.S.App. D.C. 194, 509 F.2d 527 (1974); *Ditlow v. Volpe*, 362 F.Supp. 1321 (D.C.D.C.1973),

rev'd. on other grounds 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974); *Neal-Cooper Grain Company v. Kissinger, supra*, relying on *Robertson v. Butterfield*, 162 U.S.App. D.C. 298, 498 F.2d 1031, 1033, n. 6, reversed 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975); *Legal Aid Society of Alameda County v. Brennan*, Civil Action No. C–73–0282 AJZ (D.C.Cal. March 26, 1975).

The Court is fully cognizant of the well established rule requiring narrow construction of criminal statutes. The Court has concluded that the complaint has properly alleged that the intended disclosure will be violative of § 1905, and that the affidavits presented by defendants, as controverted by Beisel's affidavit, leave material questions of fact on this issue unresolved.

Initially, the Court notes that the affidavits of Beisel and Ferguson differ not only as to their conclusions on confidentiality, but also on what the subject documents contain. For example, Beisel's second affidavit states that the materials intended to be disclosed contain actual costs and profit data and trade secrets. Ferguson's affidavits deny this. Furthermore, the descriptions of the documents are often sketchy; and the use of such phrases as "[t]he remaining records the Navy proposes to release include among other information . . .", Ferguson's December 12, 1975 Affidavit, ¶ 21, imply that the descriptions are selective only. Compounding the problem is the paucity of information concerning the significance and interrelationship of the highly sophisticated and specialized provisions at issue. In short, at this time it is impossible to rationally and intelligently weigh the relative merits of these two "experts'" opinions absent further development of the record.

## STANDARD OF REVIEW

■ Under the APA, the standard of review in this case is limited to ascertainment of whether or not defendants have abused their discretion, or acted arbitrarily or capriciously, in their decision to release the subject documents; *de novo* review is not available. See *Citizens to Preserve Overton*

*Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Therefore, decision in this action should, ideally, be made on "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts, supra*, 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111.

Yet, as is apparent from the discussion above, the full administrative "record" is not before this Court, as the subject documents are not on file. For this reason, and for the reasons previously mentioned, further proceedings shall be necessary.

Accordingly, the instant motion is hereby denied. Procedure for the future prosecution of this action shall be specified in future orders.

IT IS SO ORDERED.