The **FAIRCREST SITE OPPOSITION COMMITTEE, Plaintiff,**

v.

**Edward LEVI, United States Attorney General, et al., Defendants.**

Civ. A. No. C 76–217A.

United States District Court, N. D. Ohio, E. D.

Sept. 2, 1976.

James A. Gregg, Canton, Ohio, M. Gary Rosenblithe, Massillon, Ohio, for plaintiff.

Joseph A. Cippilone, Asst. U. S. Atty., Gen., Columbus, Ohio, Jacob F. Hess, Jr., Amerman, Burt & Jones Co., L.P.A., Canton, Ohio, Jay A. Brozost, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

Plaintiff, The Faircrest Site Opposition Committee, is an unincorporated association of property owners and/or residents of the residential area adjacent to the proposed location of a juvenile attention center (hereinafter Center) under construction near Faircrest Avenue in Canton Township, Stark County, Ohio. The purpose of the association is to prevent the construction of said Center and, to that end, this action was initiated. In view of the urgency to all parties of the issues presented, this Court has made every practicable effort to expeditiously hear and resolve plaintiff's claims.

### PLEADINGS

Plaintiff filed its complaint on July 21, 1976. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1346(a)(2), 1361, 2201, and 2202; 42 U.S.C. § 4331 *et seq.*; 5 U.S.C. § 701 *et seq.*; and Executive Order No. 11514 (March 4, 1970).

The complaint contains four counts. The first count asserts that the Center, which is being constructed primarily with federal funds, is a major Federal action within the meaning of the National Environmental Policy Act (N.E.P.A.), 42 U.S.C. § 4331 *et seq.*; that pursuant to N.E.P.A. and· the regulations of the Law Enforcement Assistance Administration (L.E.A.A.), 28 C.F.R. § 19.1 *et seq.,* the defendant project sponsors were required to submit an environmental evaluation in support of their various applications for federal funds; and that the environmental evaluations submitted were deficient in that they did not contain sufficient supporting documentation.

The second and third counts of the complaint allege that, contrary to the provisions of N.E.P.A. and L.E.A.A.'s own regulations, L.E.A.A. forwarded federal monies for the construction of the Center without either requiring an environmental impact statement (E.I.S.) or issuing a "negative declaration" indicating that such a statement was unnecessary. Plaintiff further asserts that an E.I.S. is necessary in this case.

The complaint's fourth count asserts that the project sponsors and the L.E.A.A. did not adequately study and consider alternative locations for the Center, in violation of 42 U.S.C. § 4332(E). Plaintiff further alleges that better locations for the Center are available.

On August 5, 1976, plaintiff filed an amended complaint which, in addition to the above claims, asserts a pendent claim that defendant project sponsors failed to follow certain state law procedural requirements.

### PROCEDURAL HISTORY

On the date this action was filed, the Court denied plaintiff's motion for a temporary restraining order and scheduled a hearing on plaintiff's motion for a preliminary injunction, which was consolidated with the final hearing, pursuant to Rule 65(a)(2), for July 28, 1976. At said hearing, counsel for defendants Levi and Velde, on behalf of all defendants, admitted that L.E. A.A. had not fully complied with its own

regulations, and therefore that the commitment of federal funds to that date were technically unlawful. After this admission, all parties agreed to a temporary restraining order which in effect restrained the further expenditure or commitment of federal funds for the Center, and to a remand of this action to the L.E.A.A. for the development of an administrative record and a decision as to whether to require an E.I.S. or to issue a negative declaration. Said Order was issued on said date, and another hearing, intended to both reassert the Court's jurisdiction over this action and to learn of L.E.A.A.'s actions, was scheduled for August 5, 1976.

During said period of remand, the L.E.A.A.'s representative, Eldon James, reviewed newly received documentation from the Center's sponsors and conducted an informal hearing at which time representatives of plaintiff were heard. L.E.A.A.'s regulations do not require such a hearing, but its conduct was contemplated by the July 29, 1976 stipulated Order. Although prior to said hearing James was prepared to issue a negative declaration, the materials presented therein raised substantial doubts as to what he later termed the "human" environmental questions, e. g. aesthetics and safety problems. Until resolved, these doubts precluded him from issuing a negative declaration. This decision was reached on August 3, 1976. In view of the impending hearing scheduled for August 5, 1976, and James' resulting inability to finally resolve these doubts, he ordered the preparation of an environmental impact statement.

At the August 5, 1976 hearing, this decision was related to the Court. However, at that time defendants moved the Court for a further continuance for the purpose of permitting James additional time to gather additional evidence to satisfy his doubts about the project. Said continuance was granted. Upon inquiry as to whether the Court was again remanding the case to the L.E.A.A., the Court indicated that such was

not the case, as the L.E.A.A. would thereby be "directed to review it . . ." thereby foreclosing plaintiff's argument that an administrative agency may not reconsider a decision.[1]

Thereafter, James received additional information about the proposed Center, which included minor modifications of certain plans. Plaintiff's counsel were also offered the additional opportunity to present evidence supportive of their view; however, they declined for the stated reason that since the action had not been remanded, the L.E.A.A. lacked jurisdiction to reconsider its decision.

On August 18, 1976, James issued a reconsidered decision which reversed his prior order and contained a negative declaration. This decision and the full administrative record was filed with the Court on August 20, 1976. Shortly after the filing of these documents, the Court entered a *Nunc Pro Tunc* Order remanding the action to the L.E.A.A. as of August 5, 1976.[2] The Court stated in said Order that its prior refusal to remand was inconsistent with its stated intentions at the August 5, 1976 hearing to allow the L.E.A.A. the opportunity to reconsider. By the entry of said Order, the Court recognized that its prior concern that a remand would amount to a direction to reconsider was not well founded, and that the prior refusal to remand had, in effect, decided the issue of the right to reconsider which was to be presented.

On August 24, 1976, the parties again appeared before the Court for another hearing. At that time certain motions were made by the parties which were either denied or taken under advisement. Also at said hearing, plaintiff raised the issue that the environmental statements of the local defendants were not adequately circulated as required by L.E.A.A. regulations. In part to develop the factual background of said claim; and to more fully familiarize the Court with the facts and procedural

---

1. Record of August 5, 1976 hearing, p. 27.

2. The subject Order had been prepared well in advance of the filing of L.E.A.A.'s reconsidered

decision and without knowledge that one had ever been reached.

posture of the entire case, thereby permitting it to more expeditiously resolve the issues, the Court proceeded to hear testimony and receive additional documentary evidence beyond the administrative record. The hearing extended to only the issues raised by plaintiff's original complaint.

Said hearing concluded on August 26, 1976. Later that day, the Court granted the local defendants' motion to partially dissolve the temporary restraining order. The Court permitted the commitment and expenditure of federal funds for a limited period of time and as to a limited portion of the project to prevent irreparable harm to defendants and to provide the Court with the opportunity to decide the issues presented.

## MOTIONS

Prior to the introduction of evidence on August 24, 1976, plaintiff moved the Court to remand this action to the L.E.A.A. for a third time to permit consideration of additional materials. Plaintiff argued that said materials had not been presented between August 10 and August 18, 1976 as requested by the L.E.A.A. because of plaintiff's contention that said agency was without jurisdiction, absent remand, to receive and consider additional information. Since at the time of plaintiff's refusal the Court had not yet entered its *Nunc Pro Tunc* Order remanding this action to the L.E.A.A., the argument continued, said position was justified. Plaintiff essentially claims the Court's remand has denied it the right to fully present its position.

■ As previously indicated, the *Nunc Pro Tunc* Order merely effectuated the Court's previous intentions while reserving the substantive issue presented. Yet as the basic premise of plaintiff's argument is that it has the right to present its additional materials to the L.E.A.A., and as no such right exists under L.E.A.A. regulations, the Court concludes that the motion to remand must be denied.

Defendants' motions to dismiss, which were originally denied at the hearing then later renewed, are hereby denied.

## SCOPE OF REVIEW

■ The issues raised by this action, with the exception of the pendant claim under Ohio law, all primarily involve review of the administrative decision of the L.E.A.A. As this Court has recently stated, in such cases the scope of review provided by the Administrative Procedure Act (A.P.A.) 5 U.S.C. § 701 *et seq.* must be applied over that available under other jurisdictional bases. *The Babcock & Wilcox Company v. Donald Rumsfeld, et al.,* 70 F.R.D. 595 (1976). The Court finds that it has jurisdiction of this action and that the scope of review provided by Congress in the A.P.A. limits the extent of review by this Court.

■ The standard of review in cases arising under the A.P.A. has been repeatedly and definitively defined by the Supreme Court. See *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Such standards have been consistently applied by the Court in environmental law cases. See *Silva v. Lynn,* 482 F.2d 1282 (1st Cir. 1973); *Morningside Renewal Counsel, Inc. v. U. S. Atomic Energy Comm.,* 482 F.2d 234 (2nd Cir. 1973); cert. den. 417 U.S. 951, 94 S.Ct. 3080, 41 L.Ed.2d 672. See also Annotation, 17 A.L.R.Fed. 33 (1973). In the instant case, the broadest A.P.A. review available limits the issues to a determination as to whether there is substantial evidence in the *administrative record* supporting the L.E.A.A.'s factual determinations and whether the L.E.A.A.'s decision was arbitrary, capricious, or an abuse of discretion. See *Morningside Renewal Counsel, Inc. v. U. S. Atomic Energy Comm., supra; Life of the Land v. Brinegar,* 485 F.2d 460 (9th Cir. 1973); *Town of Groton v. Laird,* 353 F.Supp. 344 (1972).

■ The Supreme Court has defined substantive evidence as being "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126

(1938). See also *Miracle v. Celebrezze,* 351 F.2d 361 (6th Cir. 1965). The Court reluctantly concludes that the administrative record contains such evidence. The decision of the E.P.A. and the report of Arthur D. Little, Inc., as well as the sponsor's environmental evaluation, clearly indicate that the Center will have no significant effect upon the natural environment. The L.E.A.A.'s expressed concerns for what was termed at the August 24–26, 1976 hearing as the human environment, e. g. aesthetics, neighborhood safety, etc., have been adequately alleviated in the administrative record by the Center's sponsors with information and modifications of plans.

One of the primary issues raised by plaintiff relates to its contention that the Center will "[d]estroy or derogate from an important recreation area . . .", 28 C.F.R. § 19.7(a)(5), thus necessitating an E.I.S. Specifically, plaintiff refers to a park immediately adjacent to the proposed facility.

Said park and the land being used for the Center are part of a tract of land comprised of approximately 35 acres owned by the Stark County Commissioners. Said land was acquired in 1922, and portions thereof have been used for three purposes: a park, the present juvenile facility, and a small cemetery. Prior to November, 1973, specific designation of portions of said tract of land had never been accomplished. In that month, the Stark County Commissioners officially designated the segments of that land available for each use. Said designation predated all but one of the five applications for funds.

■ The designation of lands available for park purposes may have resulted in a diminution of the popular conception and usage of the park. However, the mere fact of popular usage does not make undedicated lands an "important recreational area". If the contrary was true, any lands, whether public or private, could constitute such an area. Cf. *Platte Area Reclamation Committee v. Brinegar,* 7 E.R.C. 1285 (D.C.Colo. 1974). This is clearly not the meaning of the regulation. The Court concludes that L.E.A.A. had substantial evidence from which to determine that the allocation of land to the Center, and the Center's construction, do not derogate from the park.

The Court having found that substantial evidence exists in the administrative record, the remaining questions are whether the L.E.A.A. acted arbitrarily, capriciously, or in abuse of its discretion.

Plaintiff's first claim of arbitrary and capricious conduct is that the environmental evaluation of the sponsor's of the Center was not adequately circulated for review among the State and regional clearing houses, and that L.E.A.A. did not wait the required thirty days for comments thereon, as required by 28 C.F.R. § 19.9(b)(2) and (3).

The sponsor's applications for funds included statements of environmental impact. These applications and statements were adequately circulated; however, the statements of environmental impact did not include complete documentation of the representations contained therein, as required by 28 C.F.R. § 19.9(a). After the initiation of this action, L.E.A.A. requested of the sponsors the requisite documentation from which the decision to issue a negative declaration or to require an E.I.S. could be made. Such documentation has been provided to plaintiff and plaintiff has presented its views.

■ On these facts the Court concludes that defendants substantially complied with the requirements of 28 C.F.R. § 19.9(b)(2) and (3). It is clear beyond doubt that the purpose of said provisions, to provide the opportunity for all relevant facts and opinions to be contained in the record, has been satisfied in the instant case. For this reason, the Court finds this contention of plaintiff to be meritless.

The second action challenged by plaintiff under the arbitrary and capricious standard is the L.E.A.A.'s ultimate decision to issue a negative declaration. Plaintiff points to the fact that the deciding representative of L.E.A.A., Eldon James, changed his mind on this issue no less than three times in less than a month. Clearly such actions are not, to say the least, conducive to public confi-

dence in the responsibility of Washington administrators; nor is this Court impressed with the procedural lapses and indecisiveness demonstrated by L.E.A.A. in this action. However, the issue herein presented is whether its decision is arbitrary or capricious. These demonstrations of sporadic indecisiveness are merely evidence of said legal characterization; they are not proof thereof.

■ James' conflicting decisions, it must be remembered, resulted from the doubts raised in his mind as a result of the July 29, 1976 hearing with plaintiff's members, and his inability to resolve said doubts before the August 5, 1976 hearing before this Court. Thereafter, sufficient materials were presented to him and he rendered an informed, reconsidered decision thereon.[3] If L.E.A.A. had followed its own procedures in the first place, the deciding official would not have been faced with the necessity of deciding prior to receipt of all relevant information.

■ Thus while James' wavering decisions certainly appear on the surface to be the result of arbitrary and capricious action, upon reflection it is apparent that they were not.

■ Plaintiff attempts to bolster its argument that the ultimate decision was arbitrary and capricious by pointing to the failure of the L.E.A.A. to insist upon a more completely documented statement as to alternative sites. See 42 U.S.C. § 4332(E). While it is clear that the project sponsors did not prepare a report describing their consideration of alternative sites, it is equally clear that alternatives were considered. The extent of said consideration was fully communicated to L.E.A.A., and said agency's determination that said efforts adequately investigated alternatives is not arbitrary or capricious.

■ As additional and alternative grounds for the above determination, the Court concludes that if a *de novo* hearing was appropriate in this action, plaintiff

failed to prove therein that the Center could have a significant impact on the environment. Rather, the evidence adduced at the hearing indicates, and the Court so finds, that a negative declaration was the appropriate determination.

At the August 24 through August 26, 1976 hearing, the Court declined to permit plaintiff to introduce evidence on its pendant claim under State law. The stated reason for this decision was the fact that the amendment to plaintiff's complaint was filed less than twenty days prior to the hearing date, and thus that defendants' time for answering thereto had not yet even expired.

■ In view of the Court's determinations on the issues raised under federal law, the exercise by the Court of its pendant jurisdiction over this claim would necessitate hearings and other further proceedings to resolve new factual questions on purely state law issues. Federal Courts must avoid needless decisions of state law; the Court shall therefore decline to exercise its pendant jurisdiction over this state law claim. See *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This claim shall be dismissed without prejudice. Plaintiff may, of course, and in this Court's opinion should, initiate an action on this claim in a state court of competent jurisdiction.

At this point, the Court wishes to make several comments about this case. First, as all parties are aware, this Court has endeavored to justly resolve the issues raised as expeditiously as possible. Such action was necessitated by the fact that construction of the Center had already begun prior to the initiation of this suit, and in this case, delay of decision itself would have caused injury to the parties.

Urgency in decision is not especially unusual to this Court. Yet when this factor is combined with the ever altering procedural posture of the case, a result effected by L.E.A.A.'s inability to read and timely fol-

---

3. An administrative agency invested with jurisdiction has the right to reconsider prior deci-

sions. See *Bookman v. United States,* 453 F.2d 1263, 197 Ct.Cl. 108 (1972).

low its own regulations thereby necessitating action curing the deficiencies, the strain upon the judiciary's limited resources is unnecessarily increased. The L.E.A.A. is, in this Court's opinion, justifiably open to substantial criticism for its handling of this matter.

Yet, progress has resulted from plaintiff's stand. Significant improvements in the plans for the Center are now in effect. The Court is informed that L.E.A.A. will take action to train its employees to better fulfill its responsibilities under the law. In short, the Court wishes to commend plaintiff and its attorneys for these benefits occasioned by their institution of this action.

Finally, this decision in no way expresses the Court's personal opinion as to whether, if given the choice, it would have selected another location for the Center. Rather, the Court is bound to apply the very restrictive arbitrary or capricious standard and the administrative agency's actions are not violative thereof.

Accordingly, judgment shall be entered for defendants and against plaintiff. The temporary restraining order is hereby dissolved. Plaintiff's state claim shall be dismissed without prejudice, and plaintiff may institute an action in state court thereon.

IT IS SO ORDERED.