**PUBLIC CITIZEN, Appellant,**

v.

**FARM CREDIT ADMINISTRATION, Appellee.**

**No. 90–5290.**

United States Court of Appeals, District of Columbia Circuit.

July 12, 1991.

Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence and Nathan Dodell, Asst. U.S. Attys., were on the motion, Washington, D.C., for summary affirmance, for appellee. Marina Utgoff Braswell, Asst. U.S. Atty., also entered an appearance, Washington, D.C., for appellee.

Alan B. Morrison and Eleanor H. Smith, were on the cross-motion, Washington, D.C., for summary reversal, for appellant.

Before WALD, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

## ON MOTION FOR SUMMARY AFFIRMANCE AND CROSS-MOTION FOR SUMMARY REVERSAL

PER CURIAM:

Public Citizen appeals from an order of the district court granting summary judgment in favor of the Farm Credit Administration ("FCA") in this Freedom of Information Act ("FOIA") dispute. Because the district court correctly held that examination reports on the National Consumer Cooperative Bank ("NCCB") prepared by the FCA are exempt from disclosure pursuant to FOIA exemption 8, 5 U.S.C. § 552(b)(8), we grant the FCA's motion for summary affirmance.

### I.

Congress created and chartered the NCCB in 1978. It provides specialized credit and technical assistance to nonprofit cooperatives. 12 U.S.C. § 3011. It is capitalized in part by the United States and in part by private investors. *Id.* §§ 3014, 3017. It does not receive deposits that may be withdrawn on demand by the public.

The FCA examines and regulates the Farm Credit System, a nationwide network of banks and cooperatives that provides credit in the agricultural sector, *id.* §§ 2001, 2002, but does not regulate or supervise the NCCB. Since 1981, however, it has prepared and submitted to Congress annual credit examinations on the NCCB. *See id.* § 3025. Public Citizen seeks access to these credit examination reports.

The FCA asserts that the examination reports are exempt from disclosure pursuant to FOIA exemption 8. Exemption 8 provides for nondisclosure of matters

> contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions.

5 U.S.C. § 552(b)(8). Public Citizen argues that the examination reports are not protected, first because the NCCB is not a "financial institution" for purposes of exemption 8,[1] second because the FCA does not supervise or regulate the NCCB. We address these contentions in turn.

### II.

■ Public Citizen notes that the legislative history of exemption 8 indicates that federal regulators were concerned that disclosure of examination reports containing candid evaluations of financial institutions could "undermine public confidence and cause unwarranted runs on banks." Hearings on S.1663 Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 88th Cong., 2d Sess. 186 (1964). Because runs can be made only on institutions that receive deposits withdrawable on demand, Public Citizen concludes that "financial institutions" are limited to depository institutions for purposes of exemption 8.

Public Citizen's reliance on the legislative history is misplaced. "Where the language of the statute is clear in its application, the normal rule is that we are bound by it."

---

1. Although the exemption does not expressly require that examination reports concern a financial institution, the FCA does not dispute this construction of the exemption.

*Avco Corp. v. United States Dep't of Justice*, 884 F.2d 621, 623 (D.C.Cir.1989) (quoting *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 470, 109 S.Ct. 2558, 2574, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring)). The term "financial institution" is commonly defined to include

> *[a]ny* organization authorized to do business under state or federal laws relating to financial institutions, including, without limitation, banks and trust companies, savings banks, building and loan associations, savings and loan companies or associations, and credit unions.

Black's Law Dictionary 568 (5th ed. 1979) (emphasis added) (citing Uniform Probate Code § 6–101(3)). The NCCB is authorized to do business under Title 12, the portion of the United States Code relating to "Banks and Banking" and other matters concerning financial institutions. Moreover, institutions providing credit services, as does the NCCB, are included within the term "financial institutions." *See, e.g.*, Black's Law Dictionary 568 (5th ed. 1979) (defining "financial institutions" to include credit unions); 12 U.S.C. § 3302(3) (same). Because " 'we assume "that the legislative purpose is expressed by the ordinary meaning of the words used," ' " *Kosak v. United States*, 465 U.S. 848, 853, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)), we conclude that the term "financial institutions" is not limited to depository institutions for purposes of exemption 8.

Although "the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists,' " *Public Citizen*, 491 U.S. at 455, 109 S.Ct. at 2566 (quoting *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928)), Public Citizen offers no persuasive evidence that financial institutions must be depository institutions for purposes of exemption 8. Public Citizen relies on a statement by the Chairman of the National Rural Electric Cooperative Association that exemption 8 would not apply to nondepository institutions, and on the absence of any other reference to nondepository institutions in the legislative history. However, the testimony of witnesses before congressional committees prior to passage of legislation is generally weak evidence of legislative intent, *Turner v. Prod*, 707 F.2d 1109, 1119 (9th Cir.1983), and "silence in legislative history is almost invariably ambiguous. If a statute is plain in its words, the silence may simply mean that no one in Congress saw any reason to restate the obvious." *Avco*, 884 F.2d at 625.

Moreover, although the legislative history of exemption 8 does not define "financial institutions," the National Consumer Cooperative Bank Act and its legislative history refer to the NCCB as a financial institution. *See* 12 U.S.C. § 3012(11) (providing that NCCB "may borrow money and issue notes, bonds and debentures or other obligations individually or in concert with *other financial institutions*, agencies or instrumentalities") (emphasis added); S.Rep. No. 795, 95th Cong., 2d Sess. 11, *reprinted in* 1978 U.S.Code Cong. & Admin.News 1302, 1313 (*"As an independent financial institution*, the Bank eventually will be wholly owned and controlled by cooperatives which borrow or are eligible to borrow from it.") (emphasis added).

Finally, we have twice refused to limit exemption 8 to cases in which disclosure of an examination report could threaten the solvency of the type of institution examined. In *Consumers Union v. Heimann*, 589 F.2d 531 (D.C.Cir.1978), appellants argued that the Comptroller of the Currency's reports on compliance with the Truth in Lending Act were not exempt because "Congress intended to protect only examination reports that reflected upon the security and solvency of financial institutions." *Id.* at 533. We held, however, that "if Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, it is not our function, even in the FOIA context, to subvert that effect." *Id.; see also id.* at 538 (Wright, J., concurring) ("I concur with the court that appellant must fail in its effort to

recast Exemption 8 from a provision that looks to the nature and source of material into one that focuses on the likely consequences of disclosure."). Likewise, in *Gregory v. FDIC,* 631 F.2d 896 (D.C.Cir. 1980) (*per curiam*), we rejected appellant's argument that examination reports were subject to disclosure merely because the examined banks had closed: "[T]his is not a case in which the plain meaning of the statute yields an unreasonable result. It is clear from the legislative history that the exemption was drawn to protect not simply each individual bank but the integrity of financial institutions as an industry." *Id.* at 898. Although *Consumers Union* and *Gregory* concerned the phrase "contained in or related to examination, operating, or condition reports" rather than the term "financial institutions," Public Citizen offers no justification for its contention that the latter should be defined with reference to the consequences of disclosure while the former is not.

Because exemption 8 refers to "financial institutions" rather than depository institutions, because the legislative history of the exemption does not indicate an intent to limit the exemption to depository institutions, and because this court has twice refused to confine the exemption to cases in which disclosure of an examination report could cause a run on the examined financial institution, we conclude that nondepository institutions such as the NCCB are financial institutions for purposes of exemption 8.

### III.

▮ Public Citizen next argues that "[a] straightforward reading of this exemption would require that the reference to an agency that regulates or supervises financial institutions limits the exemption to the examination reports concerning the financial institutions that the agency regulates or supervises." Opposition to Motion for Summary Affirmance at 12. Because the FCA does not supervise or regulate the NCCB, Public Citizen asserts that the FCA's reports on the NCCB are not exempt.

The text of exemption 8 does not impose the requirement suggested by Public Citizen. The exemption refers to "reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). It does not require that the agency regulate or supervise the particular institution that is the subject of the report.

Moreover, applying the exemption as written is not inconsistent with the legislative intent. The legislative history reveals a

> concern that disclosure of examination, operation, and condition reports containing frank evaluations of the investigated banks might undermine public confidence and cause unwarranted runs on banks.... [A] secondary purpose in enacting exemption 8 appears to have been to safeguard the relationship between the banks and their supervising agencies. If details of the bank examinations were made freely available to the public and to banking competitors, there was concern that banks would cooperate less than fully with federal authorities.

*Consumers Union,* 589 F.2d at 534. These concerns may be implicated regardless of whether the agency regulates or supervises the financial institution. The FCA represents that its examination reports on the NCCB discuss the quality of the NCCB's loans, internal controls, and management practice and structure. These frank evaluations of the NCCB may undermine public confidence and investment in the NCCB despite the absence of a regulatory or supervisory relationship between the FCA and the NCCB. These potential consequences of disclosure may also strain the cooperation between the NCCB and the FCA that is essential to the examination process. We therefore conclude that, although the FCA does not regulate or supervise the NCCB, the FCA's examination reports on the NCCB are protected from disclosure pursuant to exemption 8.

### IV.

In sum, we hold that for purposes of exemption 8, a "financial institution" need

not be a depository institution and examination reports need not pertain to an institution that is regulated or supervised by the withholding agency. Accordingly, the district court's order is

*Affirmed.*