**BERLINER, ZISSER, WALTER & GALLEGOS, P.C., Plaintiff,**

v.

**SECURITY AND EXCHANGE COMMISSION, Defendant.**

**Civil Action No. 95–D–94.**

United States District Court, D.Colorado.

April 29, 1997.

David A. Zisser, Berliner, Zisser, Walter & Gallegos, P.C., Denver, CO, for Plaintiff.

Richard M. Humes, Susan A. Yashar, Brenda J. Tranchida, Securities and Exchange Commission, Washington, DC, Robert M. Fusfeld, Thomas D. Carter, Securities and Exchange Commission, Denver, CO, for Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

### I. Factual and Procedural Background

This matter is before the Court on the Defendant Security and Exchange Commission's Motion to Dismiss the Complaint, or Alternatively, for Summary Judgment, filed April 3, 1995. This motion has been fully briefed and the Court took oral argument from the parties on the motion at a hearing held on February 7, 1997. This case arose when Plaintiff ("BZWG") made a November 1, 1994 Freedom of Information Act ("FOIA") request to the Security and Exchange Commission ("S.E.C.") for production of documents relating to a S.E.C. examination of Broker Services, Inc. ("BSI"). The S.E.C. denied the FOIA request on November 16, 1994, asserting that the documents were exempt from production under, *inter alia*, Exemption 8 of the FOIA. 5 U.S.C. § 552(b)(8). On November 30, 1994, BZWG filed an appeal with the S.E.C. Pursuant to 5 U.S.C. 552(a)(6)(A)(ii), the S.E.C. has twenty working days to respond to a FOIA appeal. On January 17, 1995, having received no response from the S.E.C., Plaintiff initiated the present action. After the Complaint was filed, the S.E.C. informed Plaintiff that its appeal was being processed. Finally, on March 16, 1995, the S.E.C. denied Plaintiff's appeal.

The documents requested by Plaintiff relate to a July, 1990 examination that the S.E.C. undertook into the business practices of BSI, an investment advisor company that was registered with the S.E.C. under 15 U.S.C. § 80b–1 *et seq.* On September 1, 1992 the S.E.C. revoked BSI's registration to do business, and BSI has been defunct since at least that date. Plaintiff alleges that the July, 1990 S.E.C. examination related to a large scale securities fraud perpetrated by BSI. The S.E.C. examination produced documents, totaling 328 pages, that are at the heart of this controversy.

In its opposition to the Defendant's pending motion, Plaintiff admitted that there are no genuine issues of material fact in the case that are in dispute, and that this case should

be resolved by the Court as a matter of law. (Plaintiff's Opposition, filed April 26, 1995). In fact, the parties agree that a single narrow legal issue will determine the outcome of the case. (Defendant's Motion at p. 14, Plaintiff's Opposition at p. 3). Before reaching that narrow issue, however, I must elucidate the general legal framework surrounding this case. The broad legal issue to be decided is whether the S.E.C. properly withheld the requested documents under FOIA Exemption 8. For the S.E.C. to successfully argue that it was justified in withholding the documents, it must prove the following three elements: 1) that BSI was a "financial institution"; 2) that the S.E.C. is an agency with supervisory responsibility over BSI; and 3) that the withheld documents relate to an S.E.C. examination of BSI. *National Cable Television Assoc. v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973); (Defendant's Motion at p. 14, Plaintiff's Response at p. 3). Plaintiff concedes that the S.E.C. meets element number 2 and that the documents are of a type protected by element number 3. (Plaintiff's Opposition at p. 3). Therefore, the narrow legal issue to be decided is whether investment advisors such as BSI are financial institutions within the meaning of Exemption 8 of the FOIA, thus allowing the S.E.C. to withhold the requested documents.[1] Neither party cites a case directly on point, and the parties and the Court agree that the issue is one of first impression.

## II. Analysis

### A. What is a Financial Institution Under 5 U.S.C. § 552(b)(8)

The Supreme Court recently noted that "FOIA reflects a general philosophy of full agency disclosure unless information is ex-

empted under clearly delineated statutory language.... Thus while disclosure, not secrecy, is the dominant objective of FOIA, there are a number of exemptions from the statute's broad reach." *United States Dep't. of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 494, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994) (citations omitted). The exemption at issue in this case, Exemption 8, 5 U.S.C. § 552(b)(8), is one of the exemptions to which the Supreme Court was referring. Exemption 8 states:

b) [The statutory scheme requiring disclosure] does not apply to matters that are—

8) contained in or related to examination, operating, or condition reports prepared by, or on behalf of, or for the use of an agency responsible for the regulation or supervision of *financial institutions.*

(emphasis added). Unfortunately, the FOIA does not define what qualifies as a financial institution. As discussed above, the issue of contention between the parties is whether an investment advisor—specifically BSI—qualifies as a financial institution contemplated by Exemption 8.

Although the FOIA is silent on the issue of what qualifies as a financial institution, the S.E.C. argues that the Court should adopt the definition of a financial institution contained in the legislative history of the Sunshine Act. 5 U.S.C. § 552b *et seq.* In support of its position, Defendant points out that the Sunshine Act and the FOIA are *in pari materia,*[2] requiring this Court to adopt the legislative history of the Sunshine Act when interpreting an undefined term in the FOIA. *See Jordan v. Department of Justice,* 591 F.2d 753, 770 (D.C.Cir.1978) (holding that FOIA and Sunshine Act are *in pari*

---

1. Although agreeing in its pleadings that a decision on this issue will determine the prevailing party in this case, Plaintiff offers alternative policy arguments why Exemption 8 should not be in force even if this Court rules that the S.E.C. has met its burden of proving that the exemption applies. These arguments will be analyzed separately *infra.*

2. "Upon the same matter or subject. Statutes *in pari materia* are those relating to the same person or thing or having a common purpose. This rule of statutory construction, that statutes which

relate to the same subject matter should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments, applies only when the particular statute is ambiguous." *Black's Law Dictionary* 791 (6th ed.1990) (citations omitted). The Tenth Circuit has applied this rule of statutory construction in other contexts. *E.g. Ascot Dinner Theatre, Ltd. v. Small Business Admin.,* 887 F.2d 1024, 1029 (10th Cir.1989) (construing 15 U.S.C. § 634(b) *in pari materia* with 28 U.S.C. §§ 2679 and 2680).

*materia,* mandating that they should be interpreted together).

The Sunshine Act uses the term financial institution twice in its text, §§ 552b(c)(8) and 552b(c)(9)(A), however, like the FOIA, the Sunshine Act does not define the meaning of the term. Section 552b(c)(8) of the Sunshine Act is identical to § 552(b)(8) of the FOIA, and like its sister FOIA provision, the legislative history of 552b(c)(8) does not contain a definition of "financial institution." Section 552b(c)(9)(A) of the Sunshine Act does not have a FOIA analogue; however, it does mention financial institutions,[3] and its legislative history provides the following definition of the term financial institutions:

> [the term financial institutions] is intended to include banks, savings and loan associations, credit unions, brokers and dealers in securities or commodities, such as the New York Stock Exchange, investment companies, *investment advisors,* self-regulatory organizations subject to 15 U.S.C. § 78(s) and institutional managers as defined in 15 U.S.C. § 78m(f).

S.Rep. No. 94–354, at 24 (1975) (emphasis added).

Plaintiff responds to the S.E.C.'s *in pari materia* argument by urging that the Court should not incorporate into the FOIA a definition of financial institution contained in the legislative history of the Sunshine Act. Instead, Plaintiff asserts that the term financial institutions as used in § 552(b)(8) of FOIA was meant to encompass banks, trust companies, and savings and loans, not a "mere" investment advisor. To support its position, Plaintiff argues that because Congress failed to define investment advisors as financial institutions in the text of any federal statute, and because the common meaning of financial institutions contained in Webster's Dictionary[4] does not explicitly mention investment advisors, this Court should not assume that investment advisors are meant to be included in the term financial institutions.

In *Mermelstein v. S.E.C.,* 629 F.Supp. 672 (D.D.C.1986), the District of Columbia district court was faced with a similar issue of statutory interpretation regarding Exemption 8. In *Mermelstein,* the federal court interpreted the above quoted Senate Report as incorporating "security exchanges" into the purview of financial institutions covered under § 552(b)(8) of the FOIA. *Id.* at 674–75. Therefore, the *Mermelstein* court concluded, the S.E.C. was protected by Exemption 8 from producing a report generated by the S.E.C. relating to a disciplinary proceeding of a member of the Boston Stock Exchange. Likewise, in *Parsons v. S.E.C.,* No. C–2–96–001 (S.D.Ohio Sept. 6, 1996), the United States District Court for the Southern District of Ohio held that a report generated by the National Association of Securities Dealers, Inc. for the S.E.C.—relating to an investigation of Parson's Securities, Inc.—was properly withheld under Exemption 8.

In its pleadings and during the hearing, Plaintiff argued that this Court should not follow the decisions and rationale of the district courts in *Mermelstein* and *Parsons,* asserting that it is illogical to incorporate a comment from the legislative history of the Sunshine Act to define a term contained in a substantively distinct portion of the FOIA.[5] Additionally, BZWG urges that the purpose behind Exemption 8 is to protect the integrity of financial institutions, *see Gregory v. F.D.I.C.,* 631 F.2d 896, 898–99 (D.C.Cir.1980) (*citing* H.R.Rep. No. 89–1497, at 11 (1966); S.Rep. No. 89–813, at 10 (1965)), and that

---

**3.** Under 5 U.S.C. § 552b(c)(9), agencies do not have to provide information if disclosure would "(A) in the case of an agency which regulates currencies, securities, commodities, or financial institutions, be likely to ... (ii) significantly endanger the stability of any financial institution."

**4.** According to Plaintiff, *Webster's Third New International Dictionary (Unabridged)* defines financial institutions as: "an enterprise specializing in the handling and investment of funds (as a bank, trust company, insurance company, savings and loan association, or investment company)."

**5.** Plaintiff also urged that *M.A. Schapiro v. S.E.C.,* 339 F.Supp. 467, 470 (D.D.C.1972), which held that the FOIA did not include broker-dealers in the meaning of financial institutions, should inform on the Court's decision. However, in *Mermelstein,* the district court noted that because of the subsequent passage of the Sunshine Act, *M.A. Schapiro* was no longer good law. *Mermelstein,* 629 F.Supp. at 674.

protecting the records of a investment advisor does not serve this purpose.

I first note that I reject Plaintiff's argument that the legislative purpose behind Exemption 8 would not be served by defining investment advisors as within the meaning of the term financial institution in Exemption 8. Specifically, Mr. Gene A Gohlke, Associate Director in the Division of Investment Management of the S.E.C., testified by Declaration that revealing the confidential commercial and personal information contained in S.E.C. examination reports relating to investment advisors would have a "devastating effect" on the S.E.C.'s ability to regulate investment advisors and would cause embarrassment to clients whose private financial records would become subject to public scrutiny. (See Exhibit 1, Defendant's Motion). Although I am not convinced that revealing the sought confidential information would be "devastating" to the S.E.C., I share some of Mr. Gohlke's concerns regarding the effects of making this type of information available under the FOIA.

Specifically, in *Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531, 534 (D.C.Cir.1978), it was noted that one of the purposes behind Exemption 8 was to safeguard the regulatory relationship between agencies and the entities that the agencies regulate in order to foster an environment of full cooperation. If FOIA requests such as Plaintiff's were granted by the S.E.C., or required by district courts, investment advisors would become loathe to cooperate with S.E.C. examiners because the confidential information the examiners gather would become available to the general public. This situation could undermine the environment of full cooperation between the S.E.C. and investment advisors that Exemption 8 was enacted to protect. *Id. see also Gregory*, 631 F.2d at 899 (noting "frank cooperation" fostered by Exemption 8 between banking industry and the FDIC). Additionally, as revealed by the House of Representative's FOIA legislative history, Exemption 8 was "designed to insure the security and integrity of financial institutions, for the sensitive details collected by Government agencies which regulate these institutions could, if indiscrim-

inately disclosed, cause great harm." H.R.Rep. No. 89–1497, at (1966); *see also Gregory*, 631 F.2d at 898–99 (noting that same rationale applied to the banking industry). Defining investment advisors outside of the scope of financial institutions covered by Exemption 8 would be directly contrary to this expressed congressional intent because public confidence in the investment advisor industry could suffer "great harm" if personal information that investors reveal in confidence to their investment advisor becomes available to the public through a FOIA request.

Moreover, I note that Plaintiff has not provided the Court with a palatable alternative to adopting the definition of financial institutions from the Sunshine Act's legislative history. In fact, Plaintiff offers no definition of "financial institutions" that clearly excludes investment advisors. *See* footnote 4 *supra; see also Public Citizen v. Farm Credit Admin.*, 938 F.2d 290, 292 (D.C.Cir.1991) (holding that financial institutions are not necessarily only "depository institutions"). Additionally, investment advisors, as a matter of common practice, are fiduciaries of their clients who direct, and in reality make, important investment decisions for their clients. This reality is evidenced by the S.E.C. regulations that entrusts investment advisors with the power to handle their clients' funds. *See* 17 C.F.R. § 275.206(4)–2 (1996) (allowing investment advisors to hold client funds and securities subject to certain restrictions aimed at preventing fraud).

Because there is no unambiguous definition of financial institutions provided in FOIA's text or legislative history, I adopt the definition provided by the Senate in the legislative history of the Sunshine Act, and find that its legislative history is *in pan materia* with FOIA § 552(b)(8). Under the Sunshine Act's legislative history definition, investment advisors are explicitly named as a financial institution. S.Rep. No. 94–354, at 24 (1975); *see also Mermelstein v. S.E.C.*, 629 F.Supp. 672, 674–75 (D.D.C.1986) (applying *in pari materia* rationale in holding that stock exchange is a financial institution within the meaning of Exemption 8). Moreover, incorporating this definition furthers Exemption

8's dual purposes of protecting the integrity of financial institutions and facilitating cooperation between the S.E.C. and the entities regulated by it.

### B. Time-Lapse and the Need for Continued Application of Exemption 8

■ As a second argument for relief, BZWG argues that even if Exemption 8's reference to financial institutions includes investment advisors, the exemption should have no applicability in this case because BSI has been defunct for at least four years. (Plaintiffs Opposition at 9–11). The crux of Plaintiff's argument is that because BSI been inactive for at least four years the statutory purpose behind Exemption 8 of protecting the integrity of financial institutions would not be undermined by production of the BSI examination reports, and producing the reports would further the purpose of full agency disclosure contemplated by the FOIA. In response, Defendant argues that Plaintiff has improperly limited its focus to the repercussions on defunct BSI, while ignoring the larger issue of the integrity of the investment advising system at large. Additionally, the SEC notes that it has cited cases that have rejected arguments similar to Plaintiff's, while Plaintiff has failed to cite any authority that supports its position.

In *Gregory,* the D.C. Circuit Court of Appeals held that Exemption 8 applied to closed banks as well as those still operating. *Gregory,* 631 F.2d at 898–99. The Court reasoned that Congress was cognizant, in drawing the exemption, of protecting the integrity of the banking system as a whole, and encouraging industry cooperation by protecting the confidentiality of records even after a bank has closed. *Id.* The same reasoning is applicable to the investment advisor industry as well.

The Court in *Gregory,* however, did note that it was dealing with a FOIA request made within one-year of the closing of banks, commenting "[t]his is not a case involving ancient records. Plaintiffs seek data relating to recently closed institutions with which

they were connected, including material concerning a still ongoing criminal investigation." *Id.* at 899. Plaintiff has concocted an argument from *Gregory's* dicta that, at some point-in-time, reports become dated to the point where the need for confidentiality contemplated by Congress is wholly abated. In this case, the FOIA request was made at least two years after the closing of BSI. Plaintiff is asking this Court to find that, as a matter of law, the appropriate amount of time has passed, abating any possible injury to the investment advisor industry. I believe that adopting such an ad-hoc process to determine when an appropriate amount of time has passed is not a function entrusted to a federal court. In *Consumers Union,* the D.C. Circuit Court of Appeals was faced with an argument to narrow the scope of Exemption 8 and commented that "in our view Congress has left no room for a narrower interpretation of exemption 8, and, as so aptly stated by the district judge, '[i]f this is an unfortunate result, recourse is to the Congress rather than the Courts.'" *Consumers Union,* 589 F.2d at 535 (citation omitted); *id.* at 541 (Wright, J., concurring) ("if Congress wanted a bright line, I am not persuaded that we are the ones who should smudge it."). Likewise, if an appropriate amount of time abates the purposes underlying Exemption 8, Congress, not this Court, should make the determination of what amount of time is required.

### C. Plaintiff's Supplemental Authority

■ Through a filing of supplemental authority and at the hearing, Plaintiff argued that the S.E.C.'s new Rule 230[6] reveals that the S.E.C. is being disingenuous when it argues that examination reports on investment advisors should be exempt from FOIA dissemination. Rule 230 compels the S.E.C. to disclose the contents of examination reports to respondents when the S.E.C. initiates an adjudicative proceeding. As the Defendant points out, this Rule has no applicability in the present case. This case does not arise from an adjudicative proceed-

---

6.  60 Fed.Reg. 32738 (June 23, 1995), corrected 60 Fed.Reg. 46499 (September 7, 1995) (to be   codified at 17 C.F.R. § 200 *et seq.*).

ing initiated by Defendant. Moreover, the comments to the Rule reveal that the S.E.C. sought to limit the distribution of these reports "only to named respondents in Commission-initiated adjudicative proceedings." 60 Fed.Reg. 46499 (September 7, 1995). Providing these reports to respondents is only fair considering they are facing allegations of securities fraud and the S.E.C. can rely on the reports in prosecuting respondents. Moreover, the Comments to Rule 230 clearly indicate "this Rule should not restrict the Commission's ability to withhold these reports from public disclosure in other contexts, such as pursuant to a request under the Freedom of Information Act." 60 Fed.Reg. 46499 (September 7, 1995). Therefore, Plaintiff's supplemental authority is unpersuasive.

## III. CONCLUSION

For the reasons stated above, I find that the S.E.C. properly withheld the documents requested by Plaintiff under Exemption 8, 5 U.S.C. § 552(b)(8). Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss the Complaint, or Alternatively, for Summary Judgment, is GRANTED, and this case is DISMISSED with prejudice.