BROWN, Circuit Judge,
concurring:
We began in 1978 by interpreting Exemption 8’s categorically narrow exclusion broadly. Today, we dispense with that category. A plain reading of the text and our precedents seem to compel the Court’s conclusion. Yet the result is a disquieting one. As the district court observed-the 2010 amendment “was a well-intentioned legislative fix which ... resulted in its own unintended consequences,” by “givfing] back with [ ] FOIA what [Congress] simultaneously intended to take away by repealing section 9291.” Public Investors Arbitration Bar Association v. SEC, 930 F.Supp.2d 55, 69-70 (D.D.C. 2013). Exemption 8 is no longer merely a necessary hedge against the disclosure of critical financial records. Instead, like the mythical Ouroborus, the amendment may now swallow Congress’s purported commitment to let “citizens know what their government is up to.” Nat’l Archives & Records Admin, v. Favish, 541 U.S. 157, 171-72, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004).
Our Exemption 8 cases are variations on a single theme: the exemption is “particularly broad” in scope, reflecting Congress’s “intentional[ ] and unambiguous[ ]” intent to craft an “all-inclusive” definition. Consumers Union of U.S., Inc. v. Heimann, 589 F.2d 531, 533 (D.C.Cir.1978). Without looking to the legislative history to interpret plain statutory text, Totten v. Bombardier Corp., 380 F.3d 488, 494 (D.C.Cir.2004), we may recognize that the universe of financial regulation has been radically transformed since Congress originally drafted Exemption 8’s broad language and since this Court first gave it effect. Initially, Exemption 8 was cabined by its context. Congress did not reference “examination” reports in a vacuum; the word is employed as part of an allied series protecting records contained in or related to “examination, operating, or condition reports.” 5 U.S.C. § 552(b)(8). Such phrasing was intentional. See Platt v. Union *9 Pac. R.R. Co., 99 U.S. 48, 59, 25 L.Ed. 424 (1878) (“[N]o words are to be treated as surplusage or as repetition.”) (citing state law canons of statutory construction). Congress was drafting under the principal assumption that it was regulating a world largely consisting of banks and like financial institutions, and Congress was primarily addressing the palpable “concern[ ] that release of bank examination and operating reports could endanger the fiscal well-being of [ ] subject banks.” Consumers Union, 589 F.2d at 537. Disregarding its ' modestly questionable syntax, the original text of Exemption 8 makes clear that Congress’s limitation “of financial institutions” modifies both the “agency responsible for the regulation” and materials “contained in or related to examination, operating, or condition reports.” 5 U.S.C. § 552(b)(8). Cf. Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 47:33 (7th ed. 2014) (“[W’jhere the sense of an entire act requires that a qualifying word or phrase apply to several preceding ... sections, the qualifying word or phrase is .not restricted to its immediate antecedent.”). And this emphasis on protecting fundamentally financially-related materials serves as the central tenet rationalizing Exemption 8’s existence.
Admittedly, our case law has derived a secondary purpose behind Exemption 8’s promulgation, not moored directly to the statutory text but of some undeniable, though not equal, import: “safeguarding] the relationship between the banks and their supervising agencies.” Consumers Union, 589 F.2d at 534. See also Lever Deck at ¶ 15 (“OCIE depends on receiving cooperation to effectively and efficiently conduct the ... examinations that are at issue here. In addition, OCIE relies on this cooperation to fulfill its oversight responsibilities generally, which affects the SEC’s mission to effectively regulate the securities markets.”). Yet, though this secondary purpose may at times carry significant weight, when standing alone, it ought not thwart FOIA’s broad overarching rule favoring disclosure, in all instances where a vaguely cooperative interest in the regulation of financial institutions is implicated. See generally Dep’t of Air Force v. Rose, 425 U.S. 352, 353, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (“The limited statutory exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant legislative objective of the FOIA.”).
Our case law has oft repeated the mantra of Exemption 8’s “all-inclusive” scope without fully considering the changed universe in which financial institutions operate. Cf., e.g., Pub. Citizen v. Farm Credit Admin., 938 F.2d 290, 291 (D.C.Cir.1991); Gregory v. FDIC, 631 F.2d 896 (D.C.Cir.' 1980). Our precedents serve to bolster and inform our conclusion — correct in light of the 2010 amendment — that even documents of potentially dubious relation to core “financial” data (i.e., arbitration program oversight records) necessarily fall within Exemption 8’s ambit.
Yet, to the extent our case law fosters today’s result, it bears questioning the wisdom of the course our precedents plot. The financial world has changed since the genesis of our Exemption 8 case' law. So has the world in which our financial system operates. Financial institutions and their regulators now frequently operate under a haze of public distrust fueled by repeated regulatory failures and massive, opaque, and unaccountable bailouts. The public now has good reason to doubt the rigor of our financial systems’ reliability and oversight.
The ramifications of Exemption 8’s all-encompassing secrecy therefore reach far beyond PIABA’s (legitimate) concern for the adequacy and fairness of FINRA’s re *10 gime of arbitration. It bodes ill for rebuilding civic trust that Exemption 8 could be employed to permanently shroud both the possible reckless conduct by regulated financial institutions and the particulars of sweeping agency intrusions into the sphere of the financial marketplace. See, e.g., Judicial Watch, Inc. v. U.S. Dep’t of Treasury, 796 F.Supp.2d 13, 37-38 (D.D.C. 2011) (finding many documents relating to the Treasury’s Troubled Asset Relief Program, and related agency investments, protected from disclosure by, among other things, Exemption 8).
“The fabric of [the] American empire ought to rest on the solid basis of the consent of the people.” The Federalist No. 22 (Alexander Hamilton). That at times delicate weave risks coming undone where vague principles of regulatory cooperation are allowed to inevitably trump the public’s interest in transparency.
Congress should revisit this ill-conceived amendment and make sure an apparent miscue does not morph into a serious misadventure.